UNITED STATES of America,

v.

Eric Robert RUDOLPH.

No. CR–00–S–422–S.

United States District Court,
N.D. Alabama,
Southern Division.

Oct. 5, 2004.

Richard S. Jaffe, J. Derek Drennan, Howard H. Dodd, Jr., Jaffe Strickland & Drennan PC, William M. Bowen, Jr., White Arnold Andrews & Dowd, Birmingham, AL, Judy Clarke, San Diego, CA, for Defendant.

Alice H. Martin, U.S. Attorney, Robert J. McLean, Michael W. Whisonant, William Russell Chambers, Jr., U.S. Marshal, U.S. Probation, Birmingham, AL, for Plaintiff.

## MEMORANDUM OPINION

This case is before the court on defendant's "Application for Review and Appeal of Magistrate Judge's Order of July 9, 2004[,] Denying the Defendant's Motion for Preservation and *In Camera* Inspection and/or Discovery of Rough Interview Notes," [1] and the government's response.[2]

Defendant's original motion sought not only an order directing government agents to preserve rough notes of witness interviews, but also an order requiring the notes to be submitted for *in camera* review, or produced for inspection by defense counsel.[3] The magistrate judge granted the first aspect of defendant's motion, ordering government agents to preserve rough notes, but denied defendant's request for either *in camera* review, or inspection by defense counsel.[4] This appeal followed.

## I.  DISCUSSION

Federal Rule of Criminal Procedure 16 defines the pre-trial disclosure obligations of parties to criminal prosecutions. "The rule 'is intended to prescribe the minimum amount of discovery to which the parties are entitled,' and leaves intact a court's 'discretion' to grant or deny the 'broader' discovery requests of a criminal defendant." *United States v. Jordan*, 316 F.3d 1215, 1249 n. 69 (11th Cir.2003) (quoting Notes of Advisory Committee on 1974 Amendments to Fed. R.Crim.P. 16). Two provisions of Rule 16 are pertinent to this appeal: Rule 16(a)(1)(E) and Rule 16(a)(2).

Defendant relies upon Rule 16(a)(1)(E)(i), which requires the government to disclose to the defendant items that are "material" to the preparation of his defense.

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense; . . . .

Fed.R.Crim.P. 16(a)(1)(E)(i). Defendant argues that this provision requires the government to produce rough notes of witness interviews for pre-trial inspection,[5] because he has satisfied each foundational element: he served a written request for the notes on the government; the rough notes are "papers [or] documents . . . within the government's possession, custody, or control";[6] and, the rough notes are "material to preparing the defense."[7] The government appears to concede that defendant satisfies all prerequisites of Rule 16(a)(1)(E)(i), including the materiality standard.[8] Moreover, the magistrate judge concluded that the "witness statements and agent memoranda [which defendant seeks] are undoubtedly 'material' to the de-

1. Doc. no. 276 ("Application for Review and Appeal").

2. Doc. no. 288 ("Government's Response to Defendant's Motion for Review").

3. *See* doc. no. 221.

4. *See* doc. no. 260 (Magistrate Judge's Jul. 9, 2004 Order) ("Magistrate Order").

5. Doc. no. 276 (Application for Review and Appeal), at 2.

6. Courts have construed the phrase "within the government's possession, custody, or control" as including "materials in the hands of a governmental investigatory agency closely connected to the prosecutor." *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir.2003) (citing *United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir. 1978)) (footnote omitted).

7. Doc. no. 276 (Application for Review and Appeal), at 2–3.

8. *See* doc. no. 288 (Government's Response to Defendant's Motion for Review), at 11–14 (failing to address materiality standard under Rule 16).

fense in the sense that having them would be 'helpful.' "[9] This court will assume for the sake of discussion that defendant has demonstrated the "materiality" of the items sought under Rule 16(a)(1)(E)(i), as neither party contests this aspect of the magistrate judge's Order.

The government relies upon Rule 16(a)(2), and contends that it limits the scope of those items that Rule 16(a)(1)(E)(i) otherwise would compel the government to disclose prior to trial.

The rules relied upon by the parties as the basis for their respective positions are linked to one another and must be read in tandem, as the first clause of Rule 16(a)(2) clearly indicates:

> *Except as Rule 16(a)(1) provides otherwise,* this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [*i.e.,* the *"Jencks Act"*].[10]

Fed.R.Crim.P. 16(a)(2) (emphasis supplied).

Defendant's position pivots upon the wording of the first clause of Rule 16(a)(2). He argues that it plainly exempts those items described in Rule 16(a)(1)(E)(i) from the protection of Rule 16(a)(2). Defendant's argument has considerable force. A plain reading of the two rules in conjunction with one another leads to the conclusion that a defendant can compel the government to disclose rough notes of witness interviews, *if* the defendant demonstrates the notes are material to the preparation of his defense—a showing the magistrate judge concluded defendant has made.[11]

Even so, the magistrate judge also concluded that Rule 16(a)(2) limits defendant's right to compel disclosure of such documents.[12] His Order states that defendant's plain meaning argument is "unpersuasive," when it is considered in the light of the Eleventh Circuit's decision in *United States v. Jordan, supra,* which held that Rule 16(a)(2) limited a defendant's pre-trial disclosure rights under Rule 16(a)(1)(*C*), the predecessor of the present Rule 16(a)(1)(*E*).[13]

■ It is indeed important to observe that *Jordan* interpreted Rule 16(a) as it read *before* Congress amended the Rule in 2002. *See Jordan,* 316 F.3d at 1224 & n. 11, 1225 & n. 12, 1227 & n. 17. Defendant's argument hinges on the current version of Rule 16, not its predecessor.[14] Defendant contends the plain meaning of the language in the present rule cannot be ignored based on the interpretation of prior versions of Rule 16(a)(2). The government appears to recognize the merits of the defendant's argument.[15]

---

9. Magistrate Order, at 3.

10. The *Jencks Act* was enacted by Congress in response to the Supreme Court's decision in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), holding that the government must make available a trial witness's pre-trial statements insofar as they relate to the witness's trial testimony. The Act is codified at 18 U.S.C. § 3500, and provides that "statements" of a government witness must be disclosed to a defendant, but only *after* that witness has testified on direct examination at trial. The term "statement" is defined in § 3500(e). The substance of the *Jencks Act* was incorporated into Fed.R.Crim.P. 26.2 in 1979. *See, e.g., Jordan,* 316 F.3d at 1227 n. 17. That rule essentially provides that a "statement" of a government witness shall not be subject to pre-trial discovery, nor disclosed to the defendant, until that witness has testified on direct examination during the trial of the case. "Statement" is defined in Rule 26.2(f).

11. See the text accompanying note 9 *supra.*

12. Magistrate Order, at 3.

13. *Id.* at 2–3 (citing *Jordan, 316 F.3d at 1251*).

14. In its brief, the government cites two cases from the United States District Court for the Southern District of New York to support the magistrate judge's conclusion that Rule 16 continues to limit defendant's discovery rights, as it did prior to the 2002 amendments. *See United States v. Savoca,* 2004 WL 1179312 (S.D.N.Y.), and *United States v. Ceballo,* 2003 WL 21961123 (S.D.N.Y.). These cases fail to persuade as they do not attempt to analyze Rule 16 as it currently exists, but instead rely upon case law interpreting Rule 16 prior to the 2002 amendments.

15. *See* doc. no. 288 (Government's Response to Defendant's Motion for Review), at 11–14 (failing to argue textual interpretation of Rule 16 rebut-

## A. "Plain Meaning" Analysis

The "plain meaning rule" provides that, whenever the language of a rule of procedure promulgated by the Supreme Court and adopted by Congress is plain on its face, "and does not lead, in the case before the court, to absurd or impracticable results, there is no occasion or excuse for judicial construction ... and the courts have no function but to apply and enforce the [rule] accordingly." [16]

■ The Supreme Court appears to have adopted this approach for the Federal Rules of Criminal Procedure in *Carlisle v. United States*, 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996), when addressing the interpretative guidance provided by Rule 2. Rule 2 instructs courts to interpret the rules in a manner which provides for "the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed.R.Crim.P. 2. The Supreme Court said this instruction

> sets forth a principle of interpretation to be used in construing *ambiguous* rules, *not* a principle of law superseding *clear* rules that do not achieve the stated objectives. *It does not ... provide that rules shall be construed to mean something other than what they plainly say ....*

*Carlisle*, 517 U.S. at 424, 116 S.Ct. at 1465 (emphasis supplied).

In another rule interpretation decision, *United States v. John Doe, Inc. I*, 481 U.S. 102, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987), which pivoted upon the plain meaning of the rule language at issue there, the Court said:

> Because we decide this case based on our reading of the Rule's plain language, there is no need to address the parties' [other arguments]. While such arguments are relevant when language is susceptible of more than one plausible interpretation, we have recognized that in some cases "[w]e do not have before us a choice between a 'liberal' approach toward [a Rule], on the one hand, and a 'technical' interpretation of the Rule, on the other hand. The choice, instead, is between recognizing or ignoring what the Rule provides in plain language. *We accept the Rule as meaning what it says.*"

*Id.* at 109, 107 S.Ct. at 1661 (emphasis supplied) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 30, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986)) (footnote omitted).

The most recent decision in which the Supreme Court applied the plain meaning rule to the text of a statute is *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), in which the Court examined section 330(a)(1) of the United States Bankruptcy Code, 11 U.S.C. § 330(a)(1), regulating court awards of professional fees, including fees for services rendered by attorneys in connection with bank-

---

ting defendant's analysis). The government properly does not contest that the current version of Rule 16 applies. The order accompanying the submission of the proposed amendments to Congress in 2002 states that they "shall take effect on December 1, 2002, and shall govern in all proceedings in criminal cases thereafter commenced *and, insofar as just and practicable, all proceedings then pending.*" Order of April 29, 2002 of the Supreme Court of the United States Adopting and Amending the Federal Rules of Criminal Procedure, 207 F.R.D. 89, 92 (emphasis added). This language is not unique, "but is the language submitted by the Court with all such amendments to the Federal Rules." *United States v. Bowler*, 252 F.3d 741 (5th Cir.2001). The general rule is that a new statute or rule "should apply to cases pending on the date of its enactment unless manifest injustice would result." *United States v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985). Further, it is well established that amendments that are "procedural or remedial in nature apply retroactively."

*United States v. Vanella*, 619 F.2d 384, 386 (5th Cir.1980). Accordingly, the 2002 amendments to Rule 16 apply to this case, even though defendant was indicted in the year 2000.

**16.** E.F. Hennessey, *Judges Making Law* 28 (1994) (footnotes omitted). *See also* Reed Dickerson, *The Interpretation and Application of Statutes* 229 (1975), where the author observed:

> On its positive side, the plain meaning rule states a tautology: Words should be read as saying what they say. The rule tells us to respect meaning but it does so without disclosing what the specific meaning is. At best, it reaffirms the preeminence of the statute [or rule] over materials extrinsic to it. In its negative aspect, on the other hand, the rule has sometimes been used to read ineptly expressed language out of its proper context, in violation of established principles of meaning and communication. To this extent it is an impediment to interpretation.

ruptcy proceedings. The Court noted that Congress amended the Code in 1994, and that five words were deleted from § 330 in the course of those revisions. According to the Court, "the deletion created [an] apparent legislative drafting error." *Id.* at ——, 124 S.Ct. at 1028. The Court, nevertheless, held fast to the principle that courts should rely on the unambiguous, plain meaning of a statute.

> The starting point in discerning congressional intent is *the existing statutory text . . . and not the predecessor statutes.* It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."

*Id.* at ——, 124 S.Ct. at 1030 (emphasis supplied) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1, 7 (2000)). Stated differently, the *Lamie* court found that, despite the obvious legislative drafting error resulting in the omission of five words from the predecessor statutory text, the revised bankruptcy code provision was plain on its face and did not lead to absurd results; accordingly, it would be interpreted and enforced in accordance with its plain meaning. *Lamie*, 540 U.S. at ——, 124 S.Ct. at 1031. The Court reasoned that, if "Congress enacted into law something different from what it intended, then it should

amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'" *Id.* at ——, 124 S.Ct. at 1034 (quoting *United States v. Granderson,* 511 U.S. 39, 68, 114 S.Ct. 1259, 1275, 127 L.Ed.2d 611, 635 (1994) (Kennedy, J., concurring)).[17] *Lamie* thus strongly suggests that this court should adhere to the plain meaning of the present version of Rule 16(a)(2), and enforce the language as it reads.

### 1. The "scrivener's error exception" to the plain meaning rule

■ Even so, the government presents compelling evidence in the form of Rule 16's history and Advisory Committee Notes, both of which indicate that the drafters of the present version of the Federal Rules of Criminal Procedure did not intend what the plain meaning of Rule 16(a)(2) now effects. The critical issue then is: how, *if at all,* should this court weigh this non-textual evidence?

To answer that question, the court will employ a recognized exception to the plain meaning rule that was not discussed by either party: the so-called "scrivener's error exception." One commentator described this exception as a variation on another recognized exception to the plain meaning rule— the "absurdity doctrine." [18]

---

**17.** Justice Stevens concurred in the *Lamie* judgment, but harshly criticized the majority's insistence on adhering to the plain meaning of the statute.

> As the majority recognizes . . . a leading bankruptcy law treatise concluded that the 1994 amendments [to the Code] contained an unintended error. . . . *Whenever there is such a plausible basis for believing that a significant change in statutory law resulted from scrivener's error, I believe we have a duty to examine legislative history.*

*Lamie*, 540 U.S. at ——, 124 S.Ct. at 1035 (Stevens, J., concurring) (emphasis supplied). Justice Stevens' dissent is relevant to the "scrivener's error exception" to the plain meaning rule, discussed in the following section of this opinion.

**18.** Under the absurdity doctrine, a court should adhere to a statute's plain meaning unless doing so would produce absurd results. Courts should invoke this "absurdity exception" to the plain meaning rule under only the most extraordinary circumstances. The Supreme Court has ob-

served that it "rarely invokes [an absurd results test] to override unambiguous legislation." *Barnhart v. Sigmon Coal Company,* 534 U.S. 438, 460, 122 S.Ct. 941, 955, 151 L.Ed.2d 908 (2002). A leading treatise on statutory construction explained that "the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said." 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:07 (6th ed.2000).

Although the government contends that the plain meaning of amended Rule 16 would result in a startling shift in the rules governing criminal discovery, the mere fact that the amended Rule 16 effects broader discovery rights for a criminal defendant is not, in and of itself, an absurd result. Thus, the court does not find the absurdity doctrine applicable under these circumstances.

Justice Scalia, in discussing what I have called the absurd results exception, often uses a different name: he calls it the doctrine of "scrivener's error." Moreover, this different name seems to embody a different doctrine with a subtly, but significantly, different standard defining the limits of judicial power. Justice Scalia appears to believe that the judicial power of correcting congressional mistakes is not strictly limited to cases in which the result of following the statutory language is absurd, but can be exercised in some cases of non-absurd error.... [Most importantly,] Justice Scalia believes that the "obviousness" of a statutory drafting error and of the statute's intended meaning, rather than the absurdity of the statute as written, is the ultimate criterion of the "scrivener's error" exception.

Jonathan R. Siegel, *What Statutory Drafting Errors Teach Us About Statutory Interpretation*, 69 Geo. Wash. L.Rev. 309, 329–332 (2001). "The *sine qua non* of any 'scrivener's error' doctrine ... is that the meaning genuinely intended but inadequately expressed must be absolutely clear; otherwise we might be rewriting the [rule] rather than correcting a technical mistake." *United States v. X–Citement Video, Inc.,* 513 U.S. 64, 82, 115 S.Ct. 464, 474, 130 L.Ed.2d 372 (1994) (Scalia, J., dissenting); *see also Green v. Bock Laundry Machine Company,* 490 U.S. 504, 527, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring) ("I think it entirely appropriate to consult all public materials, including the background of [a rule] and the legislative history of its adoption, to verify that what seems to us an unthinkable disposition ... was indeed unthought of....").

### a. Rule 16(a) prior to 2002 amendments

The government argues that a strict construction of Rule 16(a)(2) produces unintended results at odds with the Rule's purposes.[19] Prior to the effective date of the 2002 amendments, Rule 16(a)(2) limited the government's obligation to disclose work product,

even when the items were "material" to the preparation of a defendant's defense. The plain reading of Rule 16(a)(2) in conjunction with Rule 16(a)(1)(C) supported that conclusion, as did case law gloss. Prior to the effective date of the 2002 amendments,[20] Rule 16(a)(1)(C) read as follows:

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

In turn, the previous version of Rule 16(a)(2) read as follows:

*Except as provided in paragraphs (A), (B), (D), and (E) of subdivision (a)(1),* this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case. Nor does the rule authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500. [Emphasis supplied.]

Construing these two rules in conjunction, the Supreme Court held that, "under Rule 16(a)(1)(C) [redesignated Rule 16(a)(1)(*E*) by the 2002 amendments], a defendant may examine documents material to his defense, but, under Rule 16(a)(2), he may not examine Government work product in connection with his case." *United States v. Armstrong,* 517 U.S. 456, 463, 116 S.Ct. 1480, 1485, 134 L.Ed.2d 687 (1996).

The Eleventh Circuit also construed the pre–2002 version of Rule 16(a) in *United States v. Jordan, supra,* and concluded that Rule 16(a)(2) precluded the government from being compelled to produce for pre-trial in-

---

**19.** *See* doc. no. 288 (Government's Response to Defendant's Motion for Review), at 12–14.

**20.** Dec. 1, 2003. *See supra* note 15 and 207 F.R.D. at 92 (Apr. 29, 2002 Order of Supreme Court, ¶ 2).

spection by a defendant the raw notes or summaries of witness interviews compiled by government agents, as well as anything prepared from those notes, such as FBI–302s. *Cf., e.g.,* 316 F.3d at 1227 n. 17, 1253.

**b. Rule 16(a) after 2002 amendments**

The drafters of the Federal Rules amended Rule 16 in 2002, re-designating Rule 16(a)(1)(*C*) as 16(a)(1)(*E*), and revising the opening clause of Rule 16(a)(2). The Table set out on the following page compares the pre- and post–2002 amendment versions of the Rules at issue, and indicates through the use of ~~strike throughs~~ and <u>underlining</u> those words omitted from and added to the pre–2002 versions of the pertinent rules.

---

COMPARISON OF PRE- AND POST–2002 AMENDMENT VERSIONS
OF TWO SUBSECTIONS OF RULE 16(a)
~~Strike throughs~~ indicate text omitted from the Pre–2002 version of the rule, whereas <u>underlining</u> is used to indicate text added to the 2002 language of the same rule.

| Rule 16(a)(1)(C) Pre–2002 Language | Rule 16(a)(1)(E) Post–2002 Language |
|---|---|
| Upon ~~request of the defendant~~ <u>a defendant's request,</u> the government ~~shall~~ <u>must</u> permit the defendant to inspect and <u>to</u> copy or photograph books, papers, documents, <u>data,</u> photographs, tangible objects, buildings or places, or copies or portions ~~thereof~~ <u>of any of these items,</u> ~~which are~~ <u>if the item is</u> within the <u>government's</u> possession, custody or control ~~of the government,~~ and: ~~which are~~ <u>(i) the item is</u> material to ~~the preparation of~~ <u>preparing</u> the ~~defendant's~~ defense; ~~or are intended for use by the government as evidence in chief at the trial,~~ <u>(ii) the government intends to use the item in its case-in-chief at trial;</u> or ~~were~~ <u>(iii) the item was</u> obtained from or belong to the defendant | Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: |
| | (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant. |
| Rule 16(a)(2) Pre–2002 Language | Rule 16(a)(2) Post–2002 Language |
| ~~Except as provided in paragraphs (A), (B), (D), and (E) of subdivision (a)(1)~~ <u>Except as Rule 16(a)(1) provides otherwise,</u> this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case. Nor does the rule authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500. | *Except as Rule 16(a)(1) provides otherwise,* this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500. [Emphasis supplied.] |

---

The change to the introductory clause of Rule 16(a)(2) is pivotal. As depicted, Rule 16(a)(2) formerly began with these words: *"Except as provided in paragraphs (A), (B), (D), and (E) of subdivision (a)(1) ...."* The omission of sub-paragraph 16(a)(1)(*C*) from this clause plainly indicated that a defendant's right to compel pre-trial disclosure of the items described in Rule 16(a)(1)(*C*) was limited by Rule 16(a)(2).

The 2002 amendments revised the introductory clause of Rule 16(a)(2), however, so that it now states: *"Except as Rule 16(a)(1) provides otherwise ...."* In other words, Rule 16(a)(2) no longer *explicitly* protects the items described in Rule 16(a)(1)(*E*) [formerly Rule 16(a)(1)(*C*)] from compelled disclosure. If read literally, therefore, the post–2002 Amendment version of Rule 16(a)(2) permits a defendant to compel pre-trial disclosure of rough notes of witness interviews compiled by governmental agents, provided the defendant can show that such notes are material to the preparation of his defense.

The rub lies in these non-textual facts: both the May 10, 2001 Report of the Advisory Committee on Federal Rules of Criminal Procedure ("Advisory Committee"), *see* 207 F.R.D. at 355 *et seq.,* as well as the September 10, 2001 Report of the Judicial Conference Committee on Rules of Practice and Procedure, *see* 207 F.R.D. at 336–354, offer persuasive evidence that the drafters did not intend this result.

For example, the Advisory Committee stated in its report to the Judicial Conference that "the Committee attempted to avoid any unforeseen substantive changes and attempted in the Committee Notes to clearly state when the Committee was making a change in practice." 207 F.R.D. at 357.[21] Rule 16 was listed among the rules that "were completely reorganized to make them easier to read and apply." *Id.*

Further, the Advisory Committee's note to Rule 16 states, in pertinent part, that:

> The language of Rule 16 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. *These changes are intended to be stylistic only,* except as noted below.

207 F.R.D. at 350 (emphasis supplied).[22] *See also Schiavone v. Fortune,* 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986) ("Although the Advisory Committee's comments do not foreclose judicial consideration of the Rule's validity and meaning, the construction given by the Committee is 'of weight.'") (quoting *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946)).

This is persuasive evidence that the Advisory Committee, Judicial Conference, Supreme Court, and Congress intended to effect only "stylistic changes" to Rule 16(a)(2). Defendant's "plain reading" of the language of Rule 16(a)(2) produces much more than stylistic changes. If this court were to adopt defendant's strict construction of the amended Rule, a future defendant could compel pre-trial disclosure of not only rough notes of government agents, but all those items that fall within the wider net of government "work product" generated in connection with the investigation and prosecution of persons who are accused of committing federal criminal offenses. That would be contrary to the Eleventh Circuit's holding in *Jordan,* and the Supreme Court's opinion in *Armstrong,* among many others. Defendant's interpretation of Rule 16(a)(2), while perhaps literally correct, turns the stated purpose of the Advisory Committee and Congress on its head.

In conclusion, the "genuinely intended" meaning of Rule 16(a)(2) was "inadequately expressed" by an obvious drafting oversight, thus triggering the scrivener's error doc-

---

**21.** The Report of the Advisory Committee highlighted that the proposed amendments to the Criminal Rules were published in two packages: one for stylistic changes and one for substantive changes.

**Publication of Style and Substantive Packages for Public Comment**
In June 2000, the Standing Committee authorized publication for public comment of two packages of amendments. The purpose of presenting the proposed amendments in two separate pamphlets was to highlight for the public that in addition to the "style" changes in Rules 1 to 60, a number of significant (perhaps con-

troversial) amendments were also being proposed.
207 F.R.D. at 358. The proposed amendments to Rule 16 were not included among the rules in the "substantive" package.

**22.** The substantive changes discussed in the remainder of the Advisory Committee's note concern other sub-paragraphs of Rule 16, and are not pertinent to the present discussion. This notation evinces the Advisory Committee's ability to clearly state when a substantive change was intended.

trine, and permitting this court to look beyond the plain meaning of the rule's language to non-textual sources. In light of the drafting materials discussed, and the long line of cases interpreting the government's pre-trial disclosure obligations under the pre–2002 language of Rule 16(a)(2), a departure from the rule's previous meaning has occurred—a departure that is contrary to the objective stated in the Advisory Committee Notes to the 2002 amendment. It would not be proper to infer that the Advisory Committee and Congress, in reorganizing Rule 16 for "stylistic" purposes, intended to effect such a dramatic change without a single statement of that intention.

> Under established canons of statutory construction, "it *will not be inferred* that Congress, in revising and consolidating the laws, intended to change their effect *unless such intention is clearly expressed.*" *Anderson v. Pacific Coast S.S. Co.*, 225 U.S. 187, 199, 32 S.Ct. 626, 630, 56 L.Ed. 1047 (1912); *see United States v. Ryder*, 110 U.S. 729, 740, 4 S.Ct. 196, 201, 28 L.Ed. 308 (1884).

*Finley v. United States*, 490 U.S. 545, 554, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989) (emphasis supplied); *see also In re Chateaugay Corporation*, 89 F.3d 942, 953 (2d Cir. 1996) ("When Congress revises and renumbers existing laws, a court should not infer any legislative aim to change the laws' effect unless such intention is clearly expressed.") (citing *Finley v. United States*, 490 U.S. 545, 554, 109 S.Ct. 2003, 2009–10, 104 L.Ed.2d 593 (1989)); 207 F.R.D. at 357 (Advisory Committee Report to Judicial Conference on proposed 2002 amendments to the Federal Rules of Criminal Procedure) ("Second, the Committee attempted to avoid any unforeseen substantive change and attempted in the Committee Notes to clearly state when the Committee was making a change in practice.").

The court suggests that Rule 16(a)(2) should begin with this clause: "Except as Rule 16(a)(1)(A), (B), (C), (D), (F), and (G) provide otherwise, . . . ." In this way, Rule 16(a)(1)(E) will no longer require government disclosure of documents and objects falling under Rule 16(a)(2)'s protection: *i.e.*, "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."

In sum, the court will construe Rule 16(a)(2) as it was intended, and hope the Advisory Committee corrects its scrivener's error in the near future.[23]

## B. Whether Rough Notes Should Be Submitted for *In Camera* Inspection

■ Defendant's arguments are broader than Rule 16(a)(2), however, and implicate *Brady* and *Giglio* concerns. Federal criminal defendants have a due process right to disclosure of evidence that is favorable to the accused on the issues of guilt and punishment, *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97 10 L.Ed.2d 215 (1963), or evidence that would impeach the government's witnesses, including inconsistent statements by the witness, or plea and immunity agreements. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). These rights are independent of the Federal Rules of Criminal Procedure and *Jencks Act*, and may result in reversal of a conviction if the defense can demonstrate that there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding.

---

**23.** *Lamie*, which the court discussed earlier, does not change the result because it is not a scrivener's error case. The Court rejected the petitioner's argument that a scrivener's error obscured Congress' real intent, and that the plain language should be ignored. 124 S.Ct. at 1033. The Court, although stating it was unnecessary to look at legislative history in light of the plain language of the statute, explained that legislative history was not conclusive regarding legislative intent because of conflicting reports when the act was passed. *Id.* at 1033–34. The scrivener's error doctrine only applies when the meaning and intent are absolutely clear. Defendant provides no authority for the proposition that, after Congress and the Rules Committee amended Criminal Rule 16, and renumbered the paragraphs at issue in this appeal for "stylistic" purposes, this court should nonetheless interpret the plain language to now effect a dramatic change in the disclosure requirements.

**512**

As outlined in the magistrate judge's order, the government has produced thousands of FBI–302s [24] and other investigative records and memoranda. What defendant now seeks are the investigative agents' rough notes compiled during interviews of thousands of witnesses, and later used to generate the documents that have been produced to him, in order to compare the corresponding FBI–302s for inconsistencies or incompleteness. If the majority of rough notes have been retained, this would require reading hundreds of thousands of pages of handwritten materials, and then comparing those materials to the corresponding FBI–302s generated from the notes.

The court agrees with the magistrate judge that defendant's arguments do not warrant a "wholesale *in camera* review or production to the defense of rough notes of literally tens of thousands of witness interviews." [25] Defendant, however, has highlighted in his reply brief fifteen examples, referencing corresponding FBI–302s, in which questionable inconsistencies warrant further review. Defendant has not attempted to make this showing for all FBI–302s disclosed to him. According to defendant, he need not show that *all* of the rough notes are material to require production or *in camera* review. Defendant relies upon the Eleventh Circuit's decision in *United States v. Griggs*, 713 F.2d 672 (11th Cir.1983), where the court ordered *in camera* review of all of the government's evidence:

> Although appellants have pointed to no specific exculpatory evidence that may have been suppressed, there is some merit to the contention that, if the arguably exculpatory statements of witnesses discussed *supra* were in the prosecutor's file and not produced, failure to disclose indicates the "tip of an iceberg" of evidence that should have been revealed under *Brady*. It would have been appropriate for the trial court to conduct an *in camera* review of the files to detect any such suppression.

*Id.* at 674.

The court disagrees that defendant's limited submission in this case warrants review of all rough notes. The magistrate judge correctly determined that defendant did not make a sufficient showing that production or *in camera* review of *all* rough notes is required based upon the potential *Brady* or *Giglio* violations listed in the fifteen examples. The court finds, nonetheless, that a limited *in camera* review of the rough notes that accompany the FBI–302s highlighted in defendant's reply brief is warranted under these circumstances. Only upon such a review of these fifteen examples can the court determine whether the "tip of an iceberg" has been reached.

It is well within the court's discretion to order an *in camera* inspection to determine whether materials should be disclosed pursuant to *Brady*, *Giglio*, or the *Jencks Act*. *See, e.g., United States v. Medel*, 592 F.2d 1305, 1315–17 (5th Cir.1979); *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir.1978). *See also Jordan*, 316 F.3d at 1252 (noting that, in cases where the assessment of *Brady* material is debatable, "the prosecutor should mark the material as a court exhibit and submit it to the court for in camera inspection."). "Requiring materials sought for discovery to be submitted to the court for an [i]n camera inspection is a practice which is both reasonable and protective of the defendant's rights, and, we might add, one which has received a measure of approval by the Supreme Court." *Buckley*, 586 F.2d at 506 (citing *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

While an *in camera* inspection is neither the preferred course, nor required for every case in which a criminal defendant asserts a potential violation of either *Brady* or *Giglio*, the court is mindful that this is not just any other case. The stakes are high for everyone involved, and if an *in camera* inspection can allay some of defendant's concerns and avoid unnecessary error at this early stage, the court is willing to undertake the task of reviewing the specific documents referenced by defendant in the current application for

---

24. FBI–302s are the forms used by FBI agents to summarize, record, and memorialize investigative interviews with potential witnesses.

25. Magistrate Order at 1 (doc. no. 260).

review and his reply brief before the magistrate judge.

The government represents that it has compared the reports identified by defendant in his brief with the rough notes in the government's possession that relate to these reports and has found that the reports substantially and accurately reflect what was originally noted by the interviewing agents at the time of the interview.[26] The government maintains that the rough notes it has in its possession do not contain *Brady* or *Giglio* materials. Implicit in defendant's request for an *in camera* inspection is a lack of trust in the government's discernment as to what constitutes *Brady* or *Giglio* material. Defendant cites as an example some excerpts from court conferences to illustrate his point:

> McLEAN: "In Atlanta..[t]here were a lot of anonymous calls or calls where they said, you know, 'my boyfriend did it; but don't tell my boyfriend, because he'll kill me.'
>
> And we've got an obligation under the Victim Witness Act not to let that information get out and have that person killed, because we're going to get sued...."
>
> JAFFE: ".... It's classic *Brady*. Even if it's not credible, who makes that decision?"
>
> McLEAN: "Well, again, you're calling something *Brady* that's not necessarily *Brady*. The defense theory is, everything is *Brady*. The government's theory is, nothing is *Brady*. And the law says what

*Brady* is. We're going to have to figure out what that is at some point."

Court Conference, July 30, 2003, pp. 9–10 (emphasis added).[27]

> CLARKE: "[W]e would think that the negatives [referring to negative scientific test results] would be *Brady*. ...
>
> McLEAN: "Well, I'm not sure that is *Brady*. Again, your interpretation of *Brady* and ours is somewhat different. Under the circumstances, you know, we err on the side of turning stuff over. That's our position."

Court Conference, March 31, 2004, p. 22.[28]

Defendant also argued in his reply brief before the magistrate judge that he has discovered "the government is aware, or should be aware, of obviously exculpatory material which has not been turned over to the defense" regarding one of the experts the government has stated an intention to use.[29] Defendant reiterates this charge in greater detail in his application for review[30]—a charge to which the government failed to file a response. Silence can be deafening.[31]

The more prudent course, therefore, is to engage in a limited *in camera* inspection. Upon review, appellate courts are careful in reviewing decisions of a district court that has itself conducted an *in camera* inspection of alleged *Brady* material. *See Medel,* 592 F.2d at 1317. Given the fact that "what constitutes *Brady* material is fairly debatable," *Jordan,* 316 F.3d at 1252, it appears

---

26. *See* doc. no. 288, (Government's Response to Defendant's Motion for Review), at 5–6.

27. *See* doc. no. 257 (Defendant's Reply to Government's Response to Defendant's Motion for Preservation), at 12 n. 7. Defendant's quotation of the court conferences omitted some portions of arguably relevant discussion, failed to include ellipses to indicate when portions were omitted, and made typographic errors. The court has attempted to include all relevant portions of the quotations from the transcripts, and has also corrected defendant's typographical errors. The original transcript of the July 30, 2003 Court Conference appears as document #39 on the docket sheet. That transcript was corrected due to reporter error, but the corrections did not affect the portions quoted above. *See* Amended Transcript of Status Conference (doc. no. 62).

28. *See* doc. no. 257 (Defendant's Reply to Government's Response to Defendant's Motion for

Preservation), at 12 n. 7. Defendant is citing from doc. no. 173.

29. Doc. no. 257 (Defendant's Reply to Government's Response to Defendant's Motion for Preservation), at 14 and n. 9.

30. Doc. no. 276 (Defendant's Application for Review and Appeal), at 8 and n. 6.

31. While *Brady* does not require the government to produce to defendant information he already has, *see United States v. Yizar,* 956 F.2d 230, 233 (11th Cir.1992), this example cited by defendant does cause one to question why the defendant had to resort to his own devices to obtain the information which clearly would impeach a government lab analyst. As the government chose not to respond, the question looms large.

both the government and the defendant would benefit from a limited *in camera* review.

The court therefore will review the rough notes *in camera,* looking for both exculpatory material and material that is inconsistent with the corresponding FBI–302. *See United States v. Ashley,* 54 F.3d 311, 312–13 (7th Cir.1995). As pointed out in the magistrate judge's order, however, the court is somewhat limited in the review it can offer the parties at this juncture.[32] It may be that the significance of potential *Brady* or *Giglio* material may be missed by the court at this stage of the proceedings, because the court is not as knowledgeable of defense strategies as it will be during or after trial. The government operates under a similar, cognitive deficiency at this stage. *See Jordan,* 316 F.3d at 1254. Further, the determination of prejudice at this stage of the proceedings is problematic, to say the least. *See id.* at 1252 n. 79. Even so, because the defendant has provided the court with fifteen examples detailing what may be *Brady* or *Giglio* material, the court's task, as well as the government's, is somewhat manageable. Because this is the first request by defendant for an *in camera* inspection, the court cautiously undertakes this limited review to help both sides fill an obvious chasm regarding the proper interpretation of *Brady* and *Giglio.* The court will reserve ruling on whether the rough notes contain *Brady* or *Giglio* materials until after it completes its limited *in camera* review.

## II. CONCLUSION

In light of the foregoing, the order of the magistrate judge on July 9, 2004 will be affirmed in part and reversed in part. The government shall be ordered to produce the rough notes that accompany the FBI–302s identified in defendant's reply brief.[33] An order consistent with this memorandum opinion will be entered contemporaneously herewith.

## ORDER

Defendant's "Application for Review and Appeal of Magistrate Judge's Order of July 9, 2004 Denying the Defendant's Motion for Preservation and *In Camera* Inspection and/or Discovery of Rough Interview Notes" (doc. no. 276) is GRANTED IN PART. In accordance with the memorandum opinion entered contemporaneously herewith, the order of the magistrate judge on July 9, 2004 (doc. no. 260) is AFFIRMED IN PART AND REVERSED IN PART.

The government is ordered to produce the rough notes that accompany the FBI–302s that have previously been produced to defendant and identified on pages 15–34 of defendant's reply brief.[1] The *in camera* submission will be accompanied by a log prepared by the government, listing each FBI–302 identified in defendant's reply brief,[2] the agent/agency preparing the FBI–302, and whether rough notes were retained. An illustration of the log is below:

| △'s Illustration of materiality | Bates number of FBI–302 | Agent/Agency | Rough Notes Retained? |
| --- | --- | --- | --- |
| a | (left blank) | (left blank) | (left blank) |
| b | BH–302–008155 | D. Abrams–FBI | yes |
| | BH–302–000665 | V. Baynes–BPD | yes |
| | BH–AM–003550 | V. Baynes–BPD | yes |
| | BH–AM–005016 | S. Zellers- | yes |
| | BH–AM–005752 | V. Baynes–FBI | yes |
| | BH–RS–000738 | V. Baynes–FBI | yes |
| | BH–RS–001171 | M. Martin–ATF | yes |

**32.** *See* Magistrate Order, at 5 ("Yet, the court's review of the documents would not assure that everything that might be materially helpful to the defense would be made available to the defense, as the court also might not appreciate or realize the materiality of any particular needle of information in a haystack of documents.")

**33.** See doc. no. 257 (Defendant's Reply to Government's Response), at 15–34.

**1.** *See* Defendant's Reply Brief at 15–34 (doc. no. 257).

**2.** *Id.*

The *in camera* submission will then be organized according to the listing contained in the log.

The submission will be bound on the left with fifteen tabs marked "a-o" for each illustration of materiality presented by defendant in his reply brief before the magistrate judge. Each tab will consist of a copy of the FBI–302, followed by copies of the corresponding rough notes placed directly behind the FBI–302. For those instances when rough notes were not retained, the government will place a piece of paper that states "Rough Notes Not Retained" behind the corresponding FBI–302.

The government shall produce the rough notes for *in camera* review at this court's chambers in Huntsville on or before the close of business on Friday, October 15, 2004.[3] The government is directed to file a copy of the *in camera* submission under seal with the clerk of court, as well as provide a separate ("work") copy for the court's review in chambers.

3. The court is unaware how many rough notes have been retained in light of footnote 2 in the government's response to defendant's application for review and appeal (doc. no. 288).