**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

EMILE FORT, aka Twin; EDGAR
DIAZ, aka Hook; ROBERT
CALLOWAY, aka Papa,
          *Defendants-Appellees.*

No. 06-10473

D.C. No.
CR-05-00167-WHA

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

EMILE FORT, aka Twin; EDGAR
DIAZ, aka Hook,
          *Defendants-Appellants.*

No. 06-10478

D.C. No.
CR-05-00167-WHA

OPINION

Appeals from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
October 19, 2006—San Francisco, California

Filed January 8, 2007

Before: Susan P. Graber, William A. Fletcher, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge W. Fletcher

335

## COUNSEL

Erika R. Frick, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellant-cross-appellee.

Michael Satris, Law Offices of Michael Satris, Bolinas, California; and Martha Boersch and John D. Cline, Jones Day, San Francisco, California, for the defendants-appellees-cross-appellants.

## OPINION

GRABER, Circuit Judge:

The federal criminal prosecution of Defendants Emile Fort, Edgar Diaz, and Robert Calloway for racketeering and various predicate crimes is pending trial. Defendants are alleged to be members of the "Down Below Gang," a San Francisco-based street gang operating in the Sunnydale Public Housing Project. They stand accused of engaging in an illegal enterprise of individuals associated in fact, who dealt drugs, committed robberies, and assaulted and killed those they believed were cooperating with the police. The witnesses who are expected to testify for the United States are primarily residents of the housing project, and the district court has found "that the government has made a substantial showing of danger to inculpatory witnesses."

The United States brings this interlocutory appeal to challenge a discovery order issued by the district court ("June 16 Order"). The June 16 Order ruled that police reports created by San Francisco police officers prior to the federal prosecution of Defendants do *not* qualify for the discovery exception created by Federal Rule of Criminal Procedure 16(a)(2), even though those investigative reports are in the hands of the federal prosecutor for the purpose of pursuing charges against Defendants under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. The government refused to comply with the discovery order, and the district court sanctioned the noncompliance. On appeal, the government seeks review of the sanction and of

the district court's underlying decision regarding the scope of Rule 16(a)(2). Defendants Fort and Diaz cross-appeal the sanction order and seek additional sanctions against the government.

We hold that the documents in dispute are not discoverable because they are covered by Federal Rule of Criminal Procedure 16(a)(2) whether prepared by federal, state, or local officials. Accordingly, we vacate the June 16 Order and do not reach the merits of the government's challenge to the sanction imposed. We do not have jurisdiction over Defendants' cross-appeal.

In addition, the government petitions for a writ of mandamus to reverse a separate order ("August 26 Order") of the district court. The August 26 Order requires the government to produce a list of witnesses to Defendants 21 days before trial, pursuant to 18 U.S.C. § 3432. The government submitted a notice of noncompliance to the district court but has not yet violated the order nor been sanctioned. For the reasons that we explain below, we remand the August 26 Order without ruling on the mandamus petition.

## FACTUAL AND PROCEDURAL BACKGROUND

A grand jury returned an 86-count second superseding indictment charging Defendants Fort, Diaz, Calloway, and several other people with racketeering crimes that include predicate acts involving drugs, firearms, murder, and attempted murder. In the course of discovery, the district court issued a number of orders compelling the government to turn over witness information to the defendants. Defendants Fort, Diaz, and Calloway are the only three defendants who are involved in this appeal.

### A. *Rule 16 Orders*

The first set of orders at issue here relates to inculpatory police reports created by the San Francisco Police Department

prior to the initiation of the federal prosecution of Defendants. The government disclosed many thousands of pages of these reports to Defendants during discovery but redacted all witness names and locator information.

The district court issued a series of orders relating to the discoverability of the police reports. The first order, dated May 18, 2006, held that all investigative reports created by the San Francisco police that are "in the possession, custody or control" of the United States Attorney's Office are "documents" subject to discovery within the meaning of Federal Rule of Criminal Procedure 16(a)(1)(E). It further held that a report is exempt from discovery under the provisions of Rule 16(a)(2) "only if the report was prepared in connection with investigating or prosecuting the subject case by police officers having a relationship to the federal prosecutors substantially equivalent to that of federal investigative agents." The court invited the government to demonstrate that the reports were so prepared. The government made no such showing.

The district court finalized its discovery ruling with regard to the police reports in its June 16 Order. It held that "all of the local police reports related to this case in the possession of the United States Attorney's Office are producible under Rule 16 and are not within the work-product exemption to Rule 16(a)(2)." The district court also made two alternative rulings relating to waiver. First, it held that any Rule 16(a)(2) protection that may have attached to the police reports was waived by the government when it voluntarily and intentionally produced portions of the reports to Defendants. Second, it held that the government further waived any Rule 16 protection with regard to a number of the police reports by allowing a witness for the government who is an expert on gang crimes to rely on the reports in forming his conclusions. The June 16 Order directed the government to allow Defendants access to the information redacted from the police reports pursuant to the terms of an accompanying Protective Order for

Witness Security ("Protective Order") and memorandum opinion, also issued on June 16, 2006.

The district court devised the Protective Order without the government's cooperation. In its related memorandum opinion, the court found that the government had made a substantial showing of serious physical danger to inculpatory witnesses. In its view, the terms of the Protective Order would improve, rather than impede, the witnesses' security. The Protective Order contained extensive regulation of the discovery and use of protected information.

The government promptly filed a notice of noncompliance with regard to the Protective Order. The district court issued a sanction order on July 20, 2006, that precludes the government from using against Defendants the testimony of any inculpatory civilian witness whose name was redacted from discoverable materials, unless the government demonstrates that the refusal to allow access was substantially harmless.

The government appealed both the Rule 16 ruling and July 20, 2006, sanction order. Defendants Fort and Diaz filed a cross-appeal challenging the sanction order, arguing that the district court should, additionally, preclude the government from seeking the death penalty against them.

B.   *18 U.S.C. § 3432 Order*

Before making its Rule 16 determination, the district court had issued a separate discovery order on August 26, 2005, requiring the government to disclose its witness list 21 days before trial, pursuant to 18 U.S.C. § 3432. The government submitted a notice of noncompliance to the court. The government petitions for mandamus, seeking reversal of the § 3432 discovery order. The government filed its mandamus petition more than 21 days before the date on which the trial is scheduled to commence, so at the time of the filing the government

had not yet violated the discovery order and the court had not yet imposed any sanction.

## STANDARD OF REVIEW

We review de novo a district court's interpretation of the Federal Rules of Criminal Procedure. *United States v. Navarro Viayra*, 365 F.3d 790, 793 (9th Cir. 2004). We also review de novo questions of waiver. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665 (9th Cir. 2003).

## DISCUSSION

### A. *Jurisdiction*

As a preliminary matter, Defendants argue that we lack jurisdiction to review the district court's interpretation of the scope of Rule 16. Defendants assert that, because the government appealed the July 20, 2006, sanction order, the "collateral bar" rule precludes us from reviewing the district court's underlying substantive ruling contained in the June 16 Order. That argument is foreclosed by our precedent, which permits an appeal on the merits in this situation. *See United States v. Fernandez*, 231 F.3d 1240, 1245 (9th Cir. 2000) ("For while discovery orders themselves are not generally 'final' for purposes of section 1291, parties who face such an order have the option of making the decision 'final' simply by refusing to comply, and appealing the resulting sanction." (citation and internal quotation marks omitted)). We turn, therefore, to the merits of the government's appeal.

### B. *Rule 16*

**[1]** This appeal presents the question whether investigative reports prepared by a local police department prior to a federal prosecutor's involvement qualify for the discovery exemption created by Rule 16(a)(2) when they are turned over to the federal prosecutor for use in the federal investigation

and prosecution of the same acts by the same people.[1] From the outset, it is important to note that this appeal does not involve the government's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), or other disclosure rules. The identifying information here pertains to inculpatory, not exculpatory, evidence, and nothing in this opinion should be interpreted to diminish or dilute the government's *Brady* obligations. We review only the district court's determination that local police reports do not qualify for the Rule 16(a)(2) exemption and that they are, therefore, discoverable materials under Rule 16(a)(1)(E). This is an issue of first impression for our court. No constitutional or statutory provisions control the outcome, so we must begin by reviewing the text of Rule 16. *See United States v. John Doe, Inc.*, 481 U.S. 102, 109 (1987) (stating that an appellate court must look first to the plain meaning of the text when interpreting a Federal Rule of Criminal Procedure).

1. *Text of the Rule*

**[2]** Rule 16(a)(1)(E) sets out the types of information that the government must disclose to defendants during discovery:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . *documents* . . . if the item is within the government's *possession, custody, or control* and:

> (I) the item is *material to preparing the defense*;

---

[1]The dissent vigorously pursues a ghost when it attacks as illogical the government's witness-protection motive for pursuing this appeal. Dissent at 368-70, 384-85. We do not rely on the government's motive or on witness protection to interpret Rule 16(a)(2). Our interpretation of Rule 16(a)(2) applies regardless of the content of the non-disclosed inculpatory information and regardless of the potential effect of disclosure on witness safety.

(ii)   the government intends to use the item in its case-in-chief at trial; or

(iii)   the item was obtained from or belongs to the defendant.

(Emphasis added.) Rule 16(a)(2) limits the scope of discoverable materials:[2]

Except as Rule 16(a)(1) provides otherwise, *this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an* attorney for the government or *other government agent in connection with investigating or prosecuting the case.* Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

(Emphasis added.)

**[3]** It is undisputed that the written police reports at issue here are "documents" within the "possession, custody, or control" of the federal prosecutor and that they are "material to preparing the defense." Thus, the reports are discoverable under Rule 16(a)(1)(E) unless exempted by Rule 16(a)(2). We

---

[2]In *United States v. Rudolph*, 224 F.R.D. 503 (N.D. Ala. 2004), the district court addressed whether Rule 16(a)(2) provides an exception to the discovery requirements of Rule 16(a)(1)(E). Because Rule 16(a)(2) begins with the general statement, "Except as Rule 16(a)(1) provides otherwise," the court wrote that a plain reading of the text would lead to the conclusion that all materials meeting the parameters of Rule 16(a)(1)(E) must be produced. After a survey of the history of the rule's purpose and structural amendments, however, the court concluded that this conflict resulted from a "scrivener's error" and was not intended by the Advisory Committee or by Congress. *Id.* at 507. Neither party raises that issue here. But, for the purpose of clarity, we observe that the *Rudolph* court's analysis is persuasive, and we adhere to its reading of Rule 16(a)(2) as an exception to the discovery requirements of Rule 16(a)(1)(E).

must decide whether the reports were "made by an . . . other government agent in connection with investigating or prosecuting the case." This inquiry requires us, in turn, to determine what is meant by "government agent" and "the case."

### a.  *"Government agent"*

[4] The Rules do not define the phrase "other government agent." Although the constituent term "government" is not explicitly defined, it is used as shorthand for "federal government" throughout the Rules.[3] In accordance with that construction, Rule 1(b)(1) defines restrictively the term "attorney for the government" to mean (as relevant here) a federal prosecutor.[4]

---

[3]*See, e.g.*, Rule 7(f) ("The court may direct the government to file a bill of particulars."); Rule 9(a) ("The court must issue a warrant—or at the government's request, a summons—for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause . . . ."); Rule 11(a)(2) ("With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere . . . ."); Rule 12(b)(4) (entitled "Notice of the Government's Intent to Use Evidence"); Rule 12(h) ("At a suppression hearing, a law enforcement officer is considered a government witness."); Rule 12.1(b) (requiring attorney for the government to disclose information for "each witness the government intends to rely on to establish the defendant's presence at the scene" and "each government rebuttal witness to the defendant's alibi defense"); Rule 12.2(c)(3) (referring to the "government's examination" of the defendant's mental competency in context of insanity defense); *see also* Rules 5(c)(3)(D)(I), 5.1(a)(3) & (4), 5.1(f), 12.3(a)(4), 12.4(a)(2), 14(a), 14(b), 15(d), 17(b), 18, 23(a)(2), 24(b)(1) & (2), 26.3, 28, 29(a), 29.1, 31(b)(3), 32.1(a)(5)(B)(I), 32.2(a), 32.2(b)(1) & (4), 32.2(e)(1) & (2), 35(b), 41(a)(2)(C), 42(a)(2), 46(f)(3)(A) & (C), 48(a).

[4]Rule 1(b)(1) provides:

"Attorney for the government" means:

(A)   the Attorney General or an authorized assistant;

(B)   a United States attorney or an authorized assistant;

(C)   when applicable to cases arising under Guam law, the Guam Attorney General or other person whom Guam law authorizes to act in the matter; and

Even though "government" means "federal government" in Rule 16(a)(2), we are still left to determine who qualifies as an "agent" of the federal government in the context of the discovery process in a federal criminal prosecution. Defendants urge us to limit the concept of "government agent" to those individuals who were employed directly by the federal government or who were acting at the federal prosecutor's direction at the time that they drafted a report. In contrast, the government urges that the term "government agent" be given a broader definition that would include state or local police officers whose investigation of a defendant provides evidence to support a federal prosecution of the same defendant for the activities so investigated. Both readings are plausible, so we must look more deeply.

It is a general rule of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (internal quotation marks omitted). Accordingly, we first examine the other parts of Rule 16 for guidance. Rule 16(a)(1)(A) and (B) both refer to a "government agent." Rule 16(a)(1)(A) provides:

> Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a *government agent* if the government intends to use the statement at trial.

(Emphasis added.)[5] As is true of Rule 16(a)(2), the term "gov-

---

(D) any other attorney authorized by law to conduct proceedings under these rules as a prosecutor.

[5]Rule 16(a)(1)(B) provides:

Upon a defendant's request, the government must disclose to the defendant . . . all of the following:

ernment agent" is not specifically defined in Rule 16(a)(1)(A). But Rule 16(a)(1)(A) has been read to require federal prosecutors to disclose statements made by defendants to *local* law enforcement officers so long as such statements are in the federal prosecutor's possession at the time of trial. *See United States v. Mitchell*, 613 F.2d 779, 781 (10th Cir. 1980) (holding that Rule 16(a)(1)(A)'s disclosure requirement applies to a statement made by the defendant to a state probation officer); *see also United States v. Rinn*, 586 F.2d 113, 120 (9th Cir. 1978) (analyzing under Rule 16(a)(1)(A) the government's failure to disclose the defendant's statement to an undercover state police officer and holding that there was no violation, but only because the defendant's statement was not in response to "interrogation"); *United States v. Cooper*, 800 F.2d 412, 416 (4th Cir. 1986) (same, with regard to the defendant's incriminating statements to a D.C. corrections officer); *United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997) (holding that the government did not violate Rule 16(a)(1)(A) by failing to disclose the defendant's state-court guilty pleas before trial, where it disclosed them as soon as it gained possession). We have found no contradictory construction of Rule 16(a)(1)(B).

---

(i) any relevant written or recorded statement by the defendant if:

- the statement is within the government's possession, custody, or control; and

- the attorney for the government knows—or through due diligence could know—that the statement exists;

(ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a *government agent*; and

(iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

(Emphasis added.)

The government's proposed reading of "government agent" is consistent, then, with decisions implementing the same phrase in Rule 16(a)(1)(A). Even so, Defendant's narrower construction is still plausible. Therefore, we look beyond Rule 16 for additional insight.

Few of the Rules address the kind of potential cooperation between federal and non-federal players raised in this appeal, so they offer little guidance in interpreting Rule 16's use of the term "government agent." *See supra* note 2. Federal Rule of Criminal Procedure 6 is one of the few Rules, other than Rule 16, that pertains to potential cooperation among federal, state, and local law enforcement. The commentary to Rule 6 assists us in understanding the Advisory Committee's general concerns for a practical, cooperative approach.

**[5]** Rule 6 governs federal grand jury proceedings. In establishing exceptions to the general rule of secrecy for grand jury proceedings, Rule 6(e)(3) allows disclosure to "any *government personnel*—including those of a state, state subdivision, Indian tribe, or foreign government—that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce criminal law." Fed. R. Crim. P. 6(e)(3)(A)(ii) (emphasis added). Thus, "government personnel" is defined expressly to incorporate not only federal authorities, but also employees of non-federal government entities that are engaged in assisting federal criminal law enforcement. In explaining the rationale for this expansive definition, the Advisory Committee described concerns equally apropos to Rule 16:

> It is clearly desirable that federal and state authorities cooperate, as they often do, in organized crime and racketeering investigations, in public corruption and major fraud cases, and in various other situations where federal and state criminal jurisdictions overlap. Because of such cooperation, government attorneys in complex grand jury investigations frequently

find it necessary to enlist the help of a team of government agents. While the agents are usually federal personnel, it is not uncommon in certain types of investigations that federal prosecutors wish to obtain the assistance of state law enforcement personnel, which could be uniquely beneficial. The amendment permits disclosure to those personnel in the circumstances stated.

Fed. R. Crim. P. 6(e)(3)(A)(ii) (1985 amendments) advisory committee's note.

**[6]** Although the Advisory Committee has not amended Rule 16 to include a similar (or, indeed, any) express definition of "government agent," Rule 16 has not been subject to the type of conflict among district courts that prompted the Advisory Committee to amend Rule 6.[6] The practical and policy considerations are parallel. We thus find it more reasonable that, read in context, "government agent" includes nonfederal personnel whose work contributes to a federal criminal "case."

b.    *"The case"*

Defendants argue that, even if "government agent" is read to include local law enforcement officers, the police reports at issue here do not fall within the scope of Rule 16(a)(2) because they were prepared before the federal prosecutor ini-

---

[6]*See* Rule 6(e)(3)(A)(ii) (1985 amendments) advisory committee's note (noting that definition of "government personnel" was intended to clarify the rule in light of the conflict among the courts). In contrast, to date no circuit court has addressed directly the issue presented in this appeal, and very few district courts have done so. *See United States v. Cherry*, 876 F. Supp. 547, 551 (S.D.N.Y. 1995); *United States v. Green*, 144 F.R.D. 631, 641 (W.D.N.Y. 1992); *United States v. Duncan*, 586 F. Supp. 1305, 1313 (W.D. Mich. 1984); *United States v. DeBacker*, 493 F. Supp. 1078, 1082 (W.D. Mich. 1980). We discuss the holdings of those cases in the text below at pp. 354-56, 362-63.

tiated "the case." In other words, Defendants argue that, for the purposes of Rule 16(a)(2), a "case" does not begin until a federal prosecutor becomes involved. Again, the government urges a more expansive reading of the term that includes the investigative work done before a federal prosecutor takes on a federal prosecution, if the investigative work concerns a particular defendant and the particular conduct for which he is federally prosecuted.

Defendants assert that the Supreme Court and our court have already addressed this question and have defined "the case" in the limited manner that Defendants propose. To the contrary, the ambiguity of this term remains. Indeed, the opinions that Defendants cite actually weigh in favor of the government's proposed definition.

In *United States v. Armstrong*, 517 U.S. 456 (1996), the Supreme Court considered whether Rule 16 entitled the defendant to discovery for the purpose of gathering materials in support of a proposed counterclaim of selective prosecution against the federal prosecutors. The defendant sought a list of the racial identities of all defendants prosecuted federally for possession of drugs and firearms during a three-year period. *Id.* at 459. The Court held that a "defense" to which the documents must be material means only "an argument in response to the prosecution's case in chief" and, thus, did not include separate counterclaims such as selective prosecution. *Id.* at 462. In arriving at that conclusion, the Court stated that the term "case," as used in Rule 16(a)(2), does not extend to prosecutions against other people. *Id.*

The logic of *Armstrong* cuts against Defendants' proposed interpretation of "case." In *Armstrong*, the key question in determining the scope of a "case" under Rule 16(a)(2) was whether it involves the same defendant and the same crime. When state or local officials conduct an investigation that ultimately leads to a federal (instead of a state) prosecution against the same defendant for the very activities investigated,

*Armstrong* suggests that there is but one "case" against the defendant within the meaning of Rule 16. This concept is particularly applicable in RICO prosecutions where state crimes can be charged as predicate acts to establish a "pattern of racketeering activity." 18 U.S.C. § 1961(1) & (5).

**[7]** Similarly, in *United States v. Cedano-Arellano*, 332 F.3d 568 (9th Cir. 2003) (per curiam), we interpreted Rule 16(a)(2) to apply only to documents generated with a view toward the prosecution of a defendant. In *Cedano-Arellano*, the defendant sought access to the training records of the narcotics-sniffing dog that had alerted police to drugs in the gas tank of the defendant's vehicle. *Id.* at 570. We held that Rule 16(a)(2) did not except the training records from discovery because "they were not made in connection with investigating or prosecuting this or any other case." *Id.* at 571.

**[8]** The clearest reading of *Cedano-Arellano* supports the conclusion that documents that *are* "made in connection with investigating or prosecuting this or any other case" against a defendant *are* exempt from discovery under Rule 16(a)(2). Local police reports that result in a federal investigation or prosecution of the same defendant for the same acts are part of "the case" as so understood.

The continuing ambiguity of Rule 16(a)(2), notwithstanding *Armstrong* and *Cedano-Arellano*, is illustrated by the conflicting approaches that district courts have taken in interpreting it. *Compare United States v. Cherry*, 876 F. Supp. 547, 551-52 (S.D.N.Y. 1995) (holding that, where the federal prosecution is a direct outgrowth of an investigation by local authorities, the local investigation and federal prosecution are one "case," and the local police reports generated prior to federal involvement are exempt from discovery under Rule 16(a)(2)), *and United States v. Duncan*, 586 F. Supp. 1305, 1313 (W.D. Mich. 1984) (denying under Rule 16(a)(2) the defendant's discovery request for all police reports related to his prosecution), *with United States v. DeBacker*, 493 F.

Supp. 1078, 1082 (W.D. Mich. 1980) (holding that, where state police began an investigation prior to federal involvement, police reports were discoverable under Rule 16); *and United States v. Green*, 144 F.R.D. 631, 641 (W.D.N.Y. 1992) ("However, to the extent that the government has in its possession reports or records from state or local law enforcement agencies or prisons, these items are discoverable unless they are the product of a joint investigation or unless they have become the work product of the federal investigators.").

**[9]** Because the text of Rule 16(a)(2) remains ambiguous after considering its text and context, we turn to other interpretative aids to help resolve the question before us.

### 2.  *Advisory Committee's Intentions*

The Advisory Committee's explanatory notes do not address the question presented here. We must, therefore, find indirect ways to understand the Committee's intent.

Defendants contend that the drafters intended Rule 16(a)(2) to be a "work product" exception and, therefore, that we should limit the rule to the contours of the work product privilege codified in Federal Rule of Civil Procedure 26. We are not persuaded that the drafters meant to limit Criminal Rule 16 to the civil "work product" doctrine. Rule 16 itself, while encompassing government work product and having its genesis in the idea of work product, draws its boundaries more broadly than those of Civil Rule 26.[7]

---

[7]Rule 26(b)(3) states in relevant part:

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial

**[10]** It is true that Rule 16(a)(2) is often referred to as a "work product" rule. *See, e.g.*, Fed. R. Crim. P. 16 (1975 enactment) advisory committee's note D ("Rules 16(a)(2) and (b)(2) define certain types of materials ('work product') not to be discoverable."); *Armstrong*, 517 U.S. at 463 (stating that "under Rule 16(a)(2), [the defendant] may not examine Government work product in connection with his case"); *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) ("Additionally, Rule 16[(a)(2)] of the Federal Rules of Criminal Procedure recognizes the work product privilege and exempts from production 'reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case.' ").

At the same time, it is clear that Rule 16(a)(2)'s protection of investigative materials extends beyond the work product privilege as defined in the civil context. Although the Advisory Committee used the term "work product" to describe the materials discoverable under Rule 16(a)(2), it purposefully defined the Rule's scope differently than that of Rule 26. *See* Fed. R. Crim. P. 16 (1975 enactment) advisory committee's note D.

---

need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

By contrast, Rule 16(a)(2) states in relevant part:

Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.

As note D states, in 1975 the House of Representatives pro-posed to limit the materials covered by Criminal Rule 16(a)(2) to accord with Civil Rule 26. Specifically, the House sought to exempt only "the mental impressions, conclusions, opinions, or legal theories of the attorney for the government or other government agents." *Id.* The Committee *rejected* that proposal and maintained the more expansive scope that includes all "reports, memoranda, or other internal govern-ment documents." *Id.*; *see also In re Grand Jury Subpoenas*, 318 F.3d 379, 383 (2d Cir. 2003) (noting that Rule 16 imposes a stricter limit to discovery in criminal matters than Rule 26 imposes in civil litigation).

The Fifth Circuit in *United States v. Mann*, 61 F.3d 326 (5th Cir. 1995), also has cautioned that Rule 16 is *not* coex-tensive with the work product privilege, despite their interre-latedness. The *Mann* court expressly rejected the contention, raised by the defendants there (and by Defendants here), that the Supreme Court equated the two in *United States v. Nobles*, 422 U.S. 225 (1975). *Mann*, 61 F.3d at 331.

Although Rule 16 was an issue in *Nobles*, the Court addressed the work product doctrine *separately* from Rule 16 and did not equate them. 422 U.S. at 234-40. The Court's comments regarding the work product doctrine are instructive in pointing to a practical interpretation:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privi-leged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investi-gators and other agents in the compilation of materi-als in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents

for the attorney as well as those prepared by the attorney himself.

*Id.* at 238-39.

*Mann*'s distinction between the work product doctrine and Rule 16(a)(2) is further illustrated by the differing treatment of investigative reports. Under the work product doctrine, police reports are rarely protected. *See, e.g.*, *Miller v. Pancucci*, 141 F.R.D. 292, 303 (C.D. Cal. 1992); 6 James Wm. Moore et al., Moore's Federal Practice § 26.70(c)(iii) (2006). But police reports (at least those created by federal law enforcement officers) plainly are protected under Rule 16(a)(2). *United States v. Jordan*, 316 F.3d 1215, 1227 n.17 (11th Cir. 2003). Thus, again, we can see that Rule 16 is not just a work product rule.

[11] Rather, the drafters intended Rule 16(a)(2) to be a rule of discovery, related to the work product doctrine but not synonymous or coextensive with it. Therefore, we must go beyond the work product doctrine to determine the scope of Rule 16(a)(2).

### 3. *Symmetry of Obligations*

Rule 16 does not stand in isolation as the sole source of discovery obligations placed on parties to criminal litigation. Instead, Rule 16 acts in concert with other statutory and common law obligations.

#### a. *The Jencks Act*

[12] The text of Rule 16(a)(2) delimits its own scope by reference to the Jencks Act: "Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." The best clue that we have as to what the Advisory Committee that drafted Rule 16 intended regarding the scope

of Rule 16(a)(2)'s exception is its reference in its committee note to two Jencks Act-related cases, *Palermo v. United States*, 360 U.S. 343 (1959); and *Ogden v. United States*, 303 F.2d 724 (9th Cir. 1962).[8]

**[13]** The Jencks Act requires the government to disclose to criminal defendants any statement made by a government witness that is "*in the possession of the United States*" once that witness has testified. 18 U.S.C. § 3500(a) & (b) (emphasis added).[9] The Act, in its current form, does not distinguish

---

[8]"Reports, memoranda, and other internal government documents made by government agents in connection with the investigation or prosecution of the case are exempt from discovery. *Cf.* [*Palermo* and *Ogden*]." Fed. R. Crim. P. 16(b)(2) (1966 amendment) advisory committee note. (Rule 16(a)(2) was numbered as (b)(2) at the time the committee wrote its note.)

[9]The Jencks Act provides, in pertinent part:

(a)   In any criminal prosecution brought by the United States, no statement or report *in the possession of the United States* which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b)   After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness *in the possession of the United States* which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

. . . .

(e)   The term "statement," as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means —

(1)   a written statement made by said witness and signed or otherwise adopted or approved by him;

(2)   a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital

between statements obtained by federal officials and statements obtained by state or local officials. Rather, the text of the statute requires that the government disclose all witness statements, regardless whether state obtained or federally obtained, so long as the statements are in the actual possession of the federal government at the time of the trial. *See Palermo*, 360 U.S. 343 (describing Jencks Act disclosure requirements and making no distinction based on affiliation of official obtaining the statement); *Ogden*, 303 F.2d 724 (same).[10]

**[14]** In cases relating to the Jencks Act, the key question posed by most courts is that of possession. For example, in *United States v. Higginbotham*, 539 F.2d 17 (9th Cir. 1976), we addressed a defendant's request that the federal prosecutors produce photographs that the state police had included in a photo array used to obtain witness identifications of the defendant. We held that the defendants did not have the right to production because the federal prosecutor *never had possession* of the photos. *Id.* at 21. We analogized the case to a Jencks Act request:

> [T]he demand to produce these photographs might well be likened to an attempt to require production under the Jencks Act of statements in the possession of state police. *See Beavers v. United States*, 351

---

of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

    (3)   a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500 (emphasis added).

[10]Circuit courts that have addressed cases involving state-gathered statements have come to differing conclusions regarding the Jencks Act obligations. *Compare United States v. Heath*, 580 F.2d 1011, 1018-19 (10th Cir. 1978) (holding that the federal prosecutor violated the Jencks Act by failing to disclose state-obtained witness statements), *with United States v. Smith*, 433 F.2d 1266, 1269 (5th Cir. 1970) (holding that a statement made by a government witness to a state police officer was not subject to the Jencks Act).

F.2d 507 (9th Cir. 1965), where the statements were never in possession of the United States and production was not required.

*Id.*; *see also United States v. Weaver*, 267 F.3d 231, 245 (3d Cir. 2001) (noting, in dictum, that "the Jencks Act only applies to evidence in the possession of the United States, and not state authorities"); *United States v. Harris*, 368 F. Supp. 697, 709 (E.D. Pa. 1973) (finding no Jencks Act violation because, "[n]otwithstanding the cooperative law enforcement effort of the Federal and state authorities, the fact of the matter is that the reports in question were compiled by the city police officers, submitted as a matter of course to their superiors in the police department, and are now (and were at the time of trial) in the lawful possession and control of the Philadelphia Police Department"). We think that the drafters intended the same inquiry to be made here.

### b.   *Rule 16(a)(1)(E)*

[15] Our case law supports a symmetrical reading of Rule 16's discovery obligations. In *United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985), we examined the scope of the prosecution's duty to disclose evidence to the defendants under Rule 16(a)(1)(E).[11] Specifically, we were asked whether evidence found and held by state authorities until the eve of trial was discoverable to defendants under Rule 16(a)(1)(E). We focused on physical possession as the dispositive factor. *Gatto*, 763 F.2d at 1046-49. We held that the evidence became discoverable only when the state authorities placed it in the hands of the federal authorities, because "the triggering requirement under rule 16[(a)(1)(E)] is that the papers, documents, and tangible objects be in the actual possession, custody or control of the government."[12] *Id.* at 1049.

---

[11]At the time of *Gatto*, that provision was numbered 16(a)(1)(C). Rule 16 was renumbered in 2002.

[12]We expressly avoided deciding whether "government" included the FBI agents investigating the case, or whether it was limited to the federal prosecutor. *Gatto*, 763 F.2d at 1047.

*Gatto*'s emphasis on possession as the triggering requirement for Rule 16 accords with decisions by this and other circuits. *See, e.g.*, *United States v. Friedman*, 593 F.2d 109, 119-20 (9th Cir. 1979) (holding that neither Rule 16 nor the Jencks Act required the production of a document held by a foreign government, because the federal prosecutor did not have possession of it); *United States v. Adkins*, 741 F.2d 744, 747 (5th Cir. 1984) (holding that Rule 16(a)(1)(E)'s predecessor "require[s] the government only to turn over those records actually in its possession").[13]

**[16]** Under *Gatto*, state-gathered evidence becomes subject to the disclosure obligation established by Rule 16(a)(1)(E) when it passes into federal possession. We believe that Rule 16(a)(2) is best read to create symmetry between the disclosure obligation and the exception to that obligation. Rule 16(a)(2) is, after all, an exception to the disgorgement requirement of Rule 16(a)(1)(E), which depends on the document's being "within the government's possession, custody, or control." In the context of this appeal, then, investigative reports created by state police officers and turned over to federal prosecutors to support a unified federal prosecution of defendants should be considered reports "made by an . . . other government agent in connection with investigating or prosecuting the case."

---

[13]We note our accord with the Second Circuit's cautionary statement in *In re Jury Subpoenas*, 318 F.3d 379, 384-85 (2d Cir. 2003), that the protection established by Rule 16(a)(2) does not extend to "discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents . . . [but, rather, by] a third party in the ordinary course of business and that would have been created in essentially similar form irrespective of any litigation anticipated by counsel." (Citation omitted.) In that case, the documents in question were bank records. Here, we address reports created by local police officers for the purpose of recording evidence of Defendants' illegal conduct to support a prosecution of Defendants for that conduct.

c.  *Form 302s*

In addition to establishing symmetry between the government's Jencks Act obligations and those imposed by Rule 16, the government's proposed reading of Rule 16(a)(2) creates symmetry between the treatment of like investigative reports created by investigating officers. Rule 16(a)(2) exempts reports created by FBI agents (Form 302s) from disclosure. *Jordan*, 316 F.3d at 1227 n.17.

Under Defendants' limited reading of the Rule, parallel investigative reports created by state or local police officers would be treated differently for the purpose of discovery. The similar reports would be treated differently even if they were created in order to support a prosecution, turned over to federal prosecutors, and used by federal prosecutors in the preparation of a case. That asymmetry is illogical. Symmetry is particularly compelling when evidence of state crimes such as drug dealing, robbery, and murder are predicate acts under RICO to establish a "pattern of racketeering activity" in violation of federal law. 18 U.S.C. § 1961.

4.  *Policy Considerations*

Finally, to determine the intent of the drafters of Rule 16(a)(2), we examine policy considerations. In *Cherry*, the District Court for the Southern District of New York addressed squarely the issue before us. It noted:

> This federal prosecution is a direct outgrowth of investigations by local authorities. Those investigations covered the same conduct by the same defendants charged in the federal indictment. For all practical purposes, including the application of Rule 16(a)(2), this local investigation and federal prosecution should be considered one "case." To hold otherwise, thereby making underlying local or state investigatory files subject to pre-trial discovery by a

subsequently federally indicted defendant, would in all likelihood inhibit cooperation between local and federal law enforcement agencies, to the benefit of criminals but to the detriment of the public good.

876 F. Supp. at 551-52 (footnotes omitted). Those concerns are echoed here.

The present case involves the federal prosecution of Defendants for, in part, gang activities in violation of RICO, 18 U.S.C. §§ 1961-1968. A number of the predicate acts on which the RICO charge is based are state law crimes, including various counts of murder and attempted murder. It is precisely this type of case in which cooperation between state and federal law enforcement is most crucial. As we explained above, the Advisory Committee signaled the importance and desirability of federal-state cooperation when it explained changes to Criminal Rule 6. Here, San Francisco police officers investigated Defendants' illegal conduct and then turned the results of their investigation over to federal authorities, allowing their work to be subsumed within a single, unified prosecution of Defendants by the federal authorities.[14]

**[17]** In conclusion, we hold that Rule 16(a)(2) extends to the San Francisco police reports created prior to federal involvement but relinquished to federal prosecutors to support a unified prosecution of Defendants for the same criminal

---

[14]If the roles were reversed, and FBI officials conducted an investigation, the results of which they delivered to a district attorney for prosecution under state law, the federal rules of procedure would not apply and those reports would be subject to the discovery rules of the state. *See, e.g.*, *People v. Santorelli*, 741 N.E.2d 493, 497-98 (N.Y. 2000) (holding that district attorney did not violate *Brady* obligations by failing to turn over FBI 302s because the reports were not in the *actual possession* of the district attorney, the federal authorities refused to allow the district attorney access to the reports, and the trial court made a finding that the federal and state investigators acted independently). Again, our interpretation of Rule 16 preserves symmetry, as we believe the drafters intended.

activity that was the subject of the local investigation. It is an overstatement by the dissent to suggest that our opinion expands the scope of documents covered by Rule 16 and the Jencks Act. We here address witness statements to be used in a federal criminal prosecution but initially given to San Francisco police officers along with the officers' case reports revealing the identities of the witnesses and summarizing their statements. These types of documents have always been protected under federal law if compiled by federal officers. Our opinion recognizes no principled reason why the law should be any different in a federal prosecution regardless of who gathered the statements.[15]

## C.  *Waiver*

Notwithstanding its ruling that the police reports were discoverable under Rule 16, the district court held, in the alternative, that the government had waived any potential Rule 16(a)(2) protection of the documents by turning over redacted copies of the reports to Defendants. Applying the principles of the work product privilege, the court held: "Disclosure of privileged material waives the privilege as to all material on the same subject."

**[18]** As we stated above, Rule 16(a)(2) is not, strictly speaking, a work product privilege. It is, rather, a broader rule of discovery. Therefore, we look for guidance to the general principles of waiver. Waiver is the "intentional or voluntary relinquishment of a known right." Black's Law Dictionary 1580 (6th ed. 1990). It can be either express or implied. *Id.*

---

[15]Also, contrary to the dissent's assertion, dissent at 384, we do not hold that "virtually all documents" that happen to fall into the hands of the federal prosecutor qualify for Rule 16(a)(2)'s discovery exemption. Although federal possession is necessary in order to qualify for the Rule 16(a)(2) exemption, it is not sufficient. A document also must be an internal (non-public) document made by an "other government agent in connection with investigating or prosecuting the case." Rule 16(a)(2).

The Fifth Circuit's discussion in *Mann* analyzes a situation similar to the one we consider here. In *Mann*, the government had allowed the defendants access to documents protected by Rule 16(a)(2) through an express agreement between the parties that the defendants would not copy the materials. 61 F.3d at 329. The defendants broke the no-copying agreement, and the government rescinded access. *Id.* The defendants challenged—on the basis of waiver—the validity of the government's change of heart. They argued "waiver" as it applies to the work product privilege and cited *Nobles* in support. *Id.* at 331. The *Mann* court held, first, that Rule 16(a)(2) and the work product privilege are not synonymous and that *Nobles* did not make them so:

> *Nobles*, which was not concerned with Rule 16(a)(2), cannot be read to alter the plain language of a rule it did not address. . . . In short, we do not think that *Nobles* expands the attorney work product privilege to other government agent internal reports, such as those contemplated in Rule 16(a)(2).

*Id.* Applying general principles of waiver, the Fifth Circuit held that the government did not waive its Rule 16(a)(2) protection by allowing the defendants to have conditional access to the protected documents. *Id.* at 332.

Although the facts before us differ from those of *Mann* in certain respects, we reach the same result. Here, the government did not execute an express disclosure agreement. But it has clearly and consistently articulated its intention to preserve the confidentiality of inculpatory-witness identifications. It carried through on that intention with regard to the police reports by systematically redacting all witness locator information, while permitting Defendants access to the substantive information contained within the reports. The government's consistent and systematic retention of control over witness-identifying information demonstrates that it did *not*

intentionally or voluntarily relinquish its rights under Rule 16(a)(2) to hold back this information from discovery.

**[19]** We hold that the government's disclosure of redacted copies of local police reports, where the redactions were consistent and supported by an articulated intention to protect witness identities in the context of a case in which the district court has already found a serious risk of harm to witnesses, does not constitute a waiver of the documents' Rule 16(a)(2) protection.

D.   *Expert Use*

The district court also held, in the alternative, that the government had waived any potential Rule 16(a)(2) protection by allowing one of its gang-crimes experts to rely on the protected materials in developing his opinions. The government concedes that materials on which a proposed expert witness relies must be produced to Defendants in discovery, and we agree. The government disputes, however, that the expert relied on the police reports at issue here. This is a question of fact that we remand to the district court for it to determine.

E.   *Sanction Appeal*

Because we reverse the district court's June 16 discovery order, we also reverse its July 20, 2006, sanction order. Consequently, we need not reach the government's challenge to the sanction imposed by the district court.

F.   *Cross-Appeal*

We do not have jurisdiction over Defendant's cross-appeal of the July 20, 2006, sanction order. *See United States v. Eccles*, 850 F.2d 1357, 1361 (9th Cir. 1988) ("[A] defendant may not cross-appeal from an interlocutory appeal under [18 U.S.C. §] 3731.").

G. *Petition for Mandamus*

[20] Finally, we turn to the government's petition for mandamus, which challenges the district court's August 26, 2005, order requiring the government to produce a list of witnesses 21 days before trial, pursuant to 18 U.S.C. § 3432.[16] Given our ruling regarding the government's discovery obligations under Rule 16 and the effect that this ruling will have on the overall management of discovery in this case, and given the fact that the time for compliance has not yet arrived, we decline to reach the merits of the government's petition for mandamus at this time and, instead, remand all discovery issues to the district court for reconsideration.

## CONCLUSION

The cross-appeal filed by Defendants Fort and Diaz (No. 06-10478) is DISMISSED. The following orders issued by the district court are VACATED:

1. May 18, 2006 — Order re Discoverability of Local Police Reports Under Rule 16 and Schedule for Further Submissions, Doc. #367;

2. June 16, 2006 — Concluding Order re Local Police Reports and Rule 16 Discovery, Doc. #472; and

---

[16]Title 18 U.S.C. § 3432 provides:

A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment . . . and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each . . . witness, except that such list of the . . . witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person.

3.  July 20, 2006 — Testimony Preclusion Order as Sanction for Non-Compliance with Rule 16 Orders, Doc. #578.

All matters relating to the discovery of materials pursuant to Rule 16 are REMANDED to the district court for reconsideration in the light of this opinion.

---

W. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent.

The government seeks to use Federal Rule of Criminal Procedure 16(a)(2), which protects work product, to serve the purposes of Rule 16(d)(1), which protects witnesses. The government is very open in stating that it seeks to protect its witnesses rather than its work product. In the first paragraph of its brief, it writes:

> This combined appeal and petition arise out of a complex prosecution of twelve members of . . . a violent street gang in San Francisco, California. . . . [C]ivilian witness safety is a paramount concern in this prosecution. The legal issues presented by this brief are critically important for the protection of civilian witnesses.

The district court entered what it described as a "very strong, muscular protective order." The government, however, is not satisfied with the protection this order — or indeed any order — can provide to its witnesses. The government writes that it "firmly believes that no protective order, no matter how restrictive its terms, is sufficient to protect the safety and lives of these witnesses." For that reason, the government steadfastly refused to assist the district court in crafting any protective order that would require disclosure of the names or

identifying information of witnesses at any time before trial. The district court finally said in frustration:

> I gave you two opportunities [to participate in the drafting process]. I said, "Government, please, help me draft this protective order." You said no, you thumbed your nose at the Court, and said, "No, a thousand times no, we don't want a protective order." That's all you said.

The protective order entered by the district court in this case requires the government to make available to defendants' counsel the unredacted names of prospective witnesses. The order then places severe restrictions on the use counsel may make of the names and any identifying information. Up until 21 days before trial, defendants' counsel are strictly forbidden from disclosing to defendants any "identifying information on protected witnesses" either "directly or indirectly." Within 21 days of trial, witness names and identifying information can be revealed to the defendants, subject to certain restrictions. Neither the majority nor I address the government's mandamus challenge to the district court's requirement that names and identifying information be turned over within 21 days of trial.

The government has refused to comply with the district court's order. Specifically, it has refused to provide witness names or identifying information contained in police reports prepared by officers of the San Francisco Police Department. The government contends that these reports are protected as government work product under Rule 16(a)(2), even though the reports were prepared long before it had any involvement with the investigation and prosecution of these defendants. Despite its claim that the entire reports are protected as work product under Rule 16(a)(2), the government is willing to hand them over after redaction. But it insists that Rule 16(a)(2) allows it to redact names and identifying information.

The government and the majority misunderstand and therefore misuse Rule 16(a)(2). Rule 16(a)(2) is designed to protect only the government's work product in connection with a criminal case: "[U]nder Rule 16(a)(2), [a defendant] may not examine *Government work product* in connection with his case." *United States v. Armstrong*, 517 U.S. 456, 463 (1996) (emphasis added). Because the reports in question are the work product of the San Francisco Police Department, not of the government, they are not protected by Rule 16(a)(2). To the extent the government is concerned about the safety of its witnesses, its remedy is a protective order under Rule 16(d)(1).

## I.  Overview

Federal Rule of Criminal Procedure 16 deals with pretrial discovery in federal criminal cases. Rule 16 was adopted "in the view that broad discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence." Fed. R. Crim. P. 16 advisory committee's note (1974 Amendment); *see also United States v. Howell*, 231 F.3d 615, 626 (9th Cir. 2000).

Notwithstanding the goal of "broad discovery," two subsections of Rule 16 — Rules 16(a)(2) and 16(b)(2) — carve out "information not subject to disclosure" by the government and the defendant respectively. As the Advisory Note to Rule 16 explains, these subsections "set forth 'work product' exceptions to the general discovery requirements." Fed. R. Crim. P. 16 advisory committee's note (1975 Enactment); *see also Armstrong*, 517 U.S. at 463; *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) ("Rule 16 of the Federal Rules of Criminal Procedure recognizes the work product privilege . . . ."). Because Rule 16(a)(2), which protects the

government's work product, is an exception to the disclosure provisions that comprise the greater part of Rule 16(a), the exception must be construed "narrowly in order to preserve the primary operation of the provision." *Comm'r v. Clark*, 489 U.S. 726, 739 (1989).

## II.   The Text of Rule 16(a)(2)

Statutory interpretation begins with the text of the statute or rule. *United States v. Hoffman*, 794 F.2d 1429, 1431 (9th Cir. 1986) (interpreting Rule 16). The plain meaning of a statute or rule is "controlling absent a clearly expressed Congressional intention to the contrary." *Id.* at 1432. We presume that "identical words used in different parts of the same [rule]" are "intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (internal quotation marks omitted). Ordinarily, a rule should be interpreted to give effect to every clause and word contained in it. *See Negonsott v. Samuels*, 507 U.S. 99, 106 (1993); *Moskal v. United States*, 498 U.S. 103, 109 (1990). In considering plain meaning, it is necessary to keep in mind the context of particular language and the structure of the statute or rule as a whole. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

Rule 16(a)(1) requires the government to turn over certain things to the defendant in advance of trial. Pertinent to this case, Rule 16(a)(1)(E) requires the government, upon request, to permit the defendant to "inspect and to copy . . . documents . . . if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." The government has conceded that the police reports in question are "documents" within the meaning of Rule 16(a)(1)(E).

Rule 16(a)(2) provides a work-product exception to the obligation imposed under Rule 16(a)(1)(E). *See United States*

*v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2003); Majority Op. at 346 n.2. In relevant part, Rule 16(a)(2) provides:

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other [1] *internal government documents* [2] *made by* [3] *an attorney for the government or other government agent* in connection with investigating or prosecuting the case.

(Bracketed numbers and emphasis added.) The meaning of Rule 16(a)(2) is so plain that it should be unnecessary to do anything more than simply to read the text in order to conclude that it does not protect documents prepared by the San Francisco Police Department without any involvement by the federal government. But because the majority concludes otherwise, I engage in a detailed analysis of the text.

Rule 16(a)(2) contains three phrases that have particular relevance to this case. These are the numbered italicized phrases above — "internal government documents," "made by," and "an attorney for the government or other government agent." I discuss each in turn.

### A.    "Internal Government Documents"

Rule 16(a)(2) limits the "information" it protects to "reports, memoranda, or other *internal government documents*." (Emphasis added.) "Internal government documents" are a subclass of documents "within the government's possession, custody, or control" that must otherwise be produced under Rule 16(a)(1)(E). The *Oxford English Dictionary* (2d ed. 1989) defines "internal" as "[p]ertaining to the inner nature or relations of anything, as distinguished from its relations to things external to itself." *Id.* at 1121 (vol. VII). We have previously held that the term "government" in Rule 16, as used in relation to documents within the government's "possession,

custody, or control," refers to the "federal government." *United States v. Gatto*, 763 F.2d 1040, 1048-49 (9th Cir. 1985); *see also United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374-75 (9th Cir. 1987). The majority concedes that the term "government," as it is used throughout Rule 16(a)(2), refers to the "federal government." Majority Op. at 348 (" 'government' means 'federal government' in Rule 16(a)(2)"). "Internal government documents" are therefore documents "pertaining to the inner nature or relations of [the federal government], as distinguished from its relations to things external to itself." Documents generated outside the federal government without federal involvement for non-federal purposes are not "internal government documents" within the meaning of the rule.

### B. "Made By"

Rule 16(a)(2) further requires that the documents be "made by" a federal government attorney or other government agent. The *Oxford English Dictionary* defines "made" as "produced or obtained by 'making' as distinguished from other modes of origin or acquisition." *Id.* at 174 (vol. IX). Documents cannot be made by federal government attorneys or agents if they are made by someone else. The phrase "made by," like "internal government," thus signals that documents protected from disclosure by Rule 16(a)(2) are a subclass of the broader class of documents "within the government's possession, custody, or control" described in Rule 16(a)(1)(E).

### C. "An Attorney for the Government or Other Government Agent"

Finally, internal government documents must be made by "an attorney for the government or other government agent." It is undisputed that the police reports at issue were not made by an attorney. Rather, they were made by officers of the San Francisco Police Department. The question is whether the San Francisco police officers who made the reports were "other

government agents" within the meaning of Rule 16(a)(2). To answer this question, we must determine the meaning of the terms "government" and "agent," and the function of the modifier "other."

### 1. "Government"

The term "government" refers to the federal government in Rule 16(a)(2), as conceded by the majority.

### 2. "Agent"

The term "agent" encompasses only a person who acts with the authority or apparent authority of the principal. *Black's Law Dictionary* defines "agent" as "[o]ne who is *authorized to act* for or in the place of another." *Black's Law Dictionary* 68 (8th ed. 2004) (emphasis added). To "authorize" is "to give legal authority; to empower . . . to formally approve; to sanction." *Id.* at 143. The term "agent" is sufficiently broad to encompass state or local law enforcement personnel working alongside, or on behalf of, the federal government, as in a cooperative joint investigation. However, the term does not encompass state and local personnel who at the time of their actions had no authority, real or apparent, from the federal government. That is, the term "agent" requires prior or contemporaneous authorization of the agent by the federal government.

Reading the term "agent" to require prior or contemporaneous authorization is consistent with other uses of that term in Rule 16. For example, Rule 16(a)(1)(C) speaks of persons who are "legally able to bind the defendant regarding the subject of [a] statement . . . [or] conduct because of that person's position as the defendant's director, officer, employee, or *agent*." (Emphasis added). This passage mirrors the ordinary definition of "agent" as "[o]ne who is *authorized to act* for or in the place of another." In *United States v. Taylor*, 417 F.3d 1176 (11th Cir. 2005), the Eleventh Circuit employed this

definition of "agent" under Rule 16(a)(1)(A). The court held that a former cellmate of the defendant, who wrote a letter to the government six months before trial describing the defendant's purported jailhouse confession, "was not, at any time, a government agent" under Rule 16. *Id.* at 1181-82.

There is clear symmetry between Rules 16(a)(2) and 16(b)(2). Both sections employ virtually identical language when describing the protected work product of the government (Rule 16(a)(2)) and the defendant (Rule 16(b)(2)). Rule 16(b)(2) allows the defendant to refuse to disclose "reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense," as well as certain statements "made to the defendant, or the defendant's attorney or agent." In interpreting Rule 16, the Supreme Court has been guided by "perceptible symmetr[ies]" in its language. *Armstrong*, 517 U.S. at 462. The majority does not even mention Rule 16(b)(2), let alone consider the implications for that section of its broad reading of "agent" in Rule 16(a)(2). If making and later giving a document to the federal government can make a person a "government agent" within the meaning of Rule 16(a)(2), virtually all of the materials that would otherwise be required by Rule 16(a)(1) to be disclosed can be protected from disclosure by the mere act of giving them to the government. I would be very surprised if the majority would embrace a symmetrical reading of Rule 16(b)(2), in which the same definition of "agent" would provide a criminal defendant the same ability to avoid disclosure of documents otherwise required to be disclosed under Rule 16(a)(1).

### 3. "Other"

The natural reading of the phrase "other government agent" is that it means any "agent of the federal government" other than an "attorney for the government." *See* Fed. R. Crim. P. 1(b)(1) (defining "attorney for the government" as an attorney employed or "authorized by" the federal government). How-

ever, the government argues that the word "other" modifies only the word "government" rather than the two-word phrase "government agent." Under the government's reading, "other government agent" means agent of some government other than the federal government. If we read "other government agent" to mean "agent for another government," as the government suggests, there would still be work-product protection for the work of an "attorney for the government." But there would be no work-product protection for the work of any other agent of the federal government. That is, under the government's reading, there would be no work-product protection for documents prepared by an FBI agent working on a federal criminal case. This is manifestly absurd. I am confident that the government would not argue for this reading of "other government agent" in a case where documents made by an FBI agent were at issue. *See United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003).

## D.   Conclusion

I conclude from the foregoing that reports made by members of the San Francisco Police Department, long before the involvement of the federal government in the investigation and prosecution of the defendants in this case, are not protected work product under the plain meaning of Rule 16(a)(2).

## III.   Majority's Arguments

The majority makes a number of arguments to escape from the plain meaning of Rule 16(a)(2). I address them in turn.

## A.   Meaning of "Government Agent" in Rule 16(a)(1)

The majority argues that "other government agent" in Rule 16(a)(2) should be given the same meaning as "government agent" in Rule 16(a)(1). In relevant part, Rule 16(a)(1) provides:

**(A) Defendant's Oral Statement.** Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, *in response to interrogation by a person the defendant knew was a government agent* if the government intends to use the statement at trial.

**(B) Defendant's Written or Recorded Statement.** Upon a defendant's request, the government must disclose to the defendant

. . .

(ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement *in response to interrogation by a person the defendant knew was a government agent*[.]

(Emphasis added.) One court of appeals has held, without discussion, that "government agent," as used in Rule 16(a)(1), includes an agent of a state or local government. *See United States v. Mitchell*, 613 F.2d 779, 781 (10th Cir. 1980). Other courts of appeals, including our own, have treated state or local police officers as "government agents" under Rule 16(a)(1), but only in the context of cooperative activity. *See United States v. Cooper*, 800 F.2d 412, 416 (4th Cir. 1986) (official at prison housing District of Columbia and federal prisoners); *United States v. Rinn*, 586 F.2d 113, 115, 120 (9th Cir. 1978) (local police officers cooperating in a joint investigation financed by the Drug Enforcement Agency).

For two reasons, I disagree with the majority's argument. First, the majority's argument is, in effect, an argument that the word "government" in the phrase "other government agent" in Rule 16(a)(2) means any government, whether federal, state, or local. But the majority has explicitly disavowed

this interpretation of the term "government" in Rule 16(a)(2). Two paragraphs before it argues for a parallel interpretation of the term "government agent" in Rule 16(a)(1) and "other government agent" in Rule 16(a)(2), the majority writes that " 'government' means 'federal government' in Rule 16(a)(2)." Majority op. at 348.

Second, the functions of Rules 16(a)(1) and 16(a)(2) are entirely different. Rule 16(a)(1) imposes a broad discovery obligation on the government. As we wrote in *Howell*, Rule 16 was intended to facilitate the "broad discovery" needed for "the fair and efficient administration of criminal justice." 231 F.3d at 625 (quoting Fed. R. Crim. P. 16 advisory committee's note (1974 Amendment)). The history of amendments to Rule 16 makes clear the fundamental importance attached by the rulemakers to broad discovery and avoidance of unfair surprise. *See* Fed. R. Crim. P. 16 advisory committee's note (1966 Amendment) ("The rule has been revised to expand the scope of pretrial discovery."); *id.* (1974 Amendment) ("Rule 16 is revised to give greater discovery to both the prosecution and the defense."); *id.* (1975 Enactment) ("The Committee believes that it is desirable to promote greater pretrial discovery."); *id.* (1991 Amendment) ("The amendment . . . expands slightly government disclosure . . . ."); *id.* (1993 Amendment) ("New subdivisions . . . expand federal criminal discovery . . . ."). "One of the objectives of Rule 16 is to eliminate the idea that a criminal trial is a sporting contest in which the game of cat and mouse is acceptable." *Howell*, 231 F.3d at 626. It is thus at least consistent with the purpose of Rule 16 to read Rule 16(a)(1) broadly to include a requirement that the federal government disclose to a defendant any prior statement made by that defendant to a law enforcement official, whether that statement was made to a federal, state, or local official.

By contrast, Rule 16(a)(2) is a work-product exception to the broad disclosure requirement imposed by Rule 16(a)(1), which we read narrowly to preserve the operation of the pro-

vision to which it is an exception. *Clark*, 489 U.S. at 739. Rule 16(a)(2) protects only the work product of the federal government. It therefore makes sense that the phrase "other government agent" in Rule 16(a)(2) be read to refer only to agents of the federal government whose work product is being protected. If Rule 16(a)(2) were read more broadly to protect documents made by state or local law enforcement officials, the rule would be protecting the work product of a state or local government as well as the work product of the federal government.

## B. Parallel to Rule 6

Notwithstanding its concession that the term " 'government' means 'federal government' in Rule 16(a)(2)," the majority argues that the text of Federal Rule of Criminal Procedure 6(e)(3) indicates the term might include state and local government. Rule 6(e)(3)(A)(ii) carves out a limited exception to grand jury secrecy by allowing "an attorney for the government" to disclose "grand-jury matter" to "*any* government personnel — *including those of a state or state subdivision, Indian tribe, or foreign government*" if "necessary to assist in performing that attorney's duty to enforce federal criminal law." (Emphasis added.) The Rules Advisory Committee added the italicized language in 1985 after some district courts held that the phrase "government personnel" did not include state or local officials cooperating with federal attorneys. Fed. R. Crim. P. 6 advisory committee's note (1985 Amendment); *United States v. Pimental*, 380 F.3d 575, 595 (1st Cir. 2004).

Ordinary rules of statutory construction demand that the term "government" not be interpreted to mean the same thing as the phrase "any government . . . including . . . a state or state subdivision, Indian tribe, or foreign government." *See Negonsott*, 507 U.S. at 106; *Moskal*, 498 U.S. at 109. In fact, Rule 6(e)(3)(A)(ii) itself shows that if the Rules Advisory Committee intended Rule 16(a)(2) to protect the work product

of state and local, as well as federal, law enforcement officers, it knew very well how to express that intent. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks and brackets omitted)). The committee has likely declined to amend Rule 16(a)(2) because the phrase "government agent" means exactly what the committee and Congress intend it to mean — an agent of the federal government.

## C.   Parallel to Protection of Work Product in Civil Cases

The majority argues that we need not read Rule 16(a)(2) narrowly because it is "not just a work product rule." Majority Op. at 357. As the majority concedes, however, the Rules Advisory Committee, the Supreme Court, other courts of appeals, and our own court have all characterized Rule 16(a)(2) as a work-product exception. *See* Fed. R. Crim. P. 16 advisory committee's note (1975 Enactment); *Armstrong*, 517 U.S. at 463; *Fernandez*, 231 F.3d at 1247; *In re Grand Jury Subpoenas*, 318 F.3d 379, 383-84 (2d Cir. 2003); *Virgin Islands v. Fahie*, 419 F.3d 249, 257 (3d Cir. 2005); *Velsicol Chem. Corp. v. Parsons*, 561 F.2d 671, 676 (7th Cir. 1977); *United States v. Fallen*, 498 F.2d 172, 175 (8th Cir. 1974).

Neither the language nor history of Rule 16(a)(2) suggests that the rulemakers intended to expand its protection beyond traditional work product — that is, protection of materials made by a party or its agent in connection with litigation, including, but not limited to, mental impressions, conclusions, opinions, and legal theories. The text of Rule 16(a)(2), the criminal work-product exception, differs somewhat from that of Federal Rule of Civil Procedure 26(b)(3), the civil work-product exception. But the important difference between the criminal and civil work-product rules lies not in the types of materials they protect, but rather in the fact that the criminal

rule, unlike the civil rule, protects against the disclosure of work product even upon a showing of need. *See* Fed. R. Civ. P. 26(b)(3); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576-77 (9th Cir. 1992); *In re Cendant Corp. Sec. Lit.*, 343 F.3d 658, 663 (3d Cir. 2003); *In re Grand Jury Subpoenas*, 959 F.2d 1158, 1166 (2d Cir. 1992). There is nothing in the two rules to suggest that they define differently the government and its agents in describing the scope of the government's work product.

### D. Symmetry

The majority argues that the work-product protection of Rule 16(a)(2) should be read "symmetrically" with other discovery obligations under Rule 16. The majority takes this term from *Armstrong*, in which the Supreme Court construed the then-current version of Rule 16(a)(1)(C) "symmetrically." *Armstrong*, 517 U.S. at 462. The defendant had sought to prove selective prosecution by the government, and had accordingly sought discovery of documents in other cases brought by the government. The defendant relied on his entitlement, under Rule 16(a)(1)(C), to "documents . . . which are within the possession, custody or control of the government, and which are *material to the preparation of the defendant's defense* or are intended for use by the government as evidence in chief at the trial[.]" Fed. R. Crim. P. 16(a)(1)(C) (1996) (emphasis added). The Court held that these documents were not discoverable, concluding that the defendant's "defense," within the meaning of Rule 16(a)(1)(C), was symmetrical to the government's "evidence in chief." *Armstrong*, 517 U.S. at 462. Since the defense of selective prosecution would not be presented as responsive to the government's case in chief, information material to that defense was not discoverable at trial.

I agree with the majority that "symmetry" is relevant to the construction of Rule 16. But the majority seeks to create symmetry where none should exist. Worse, it ignores the symme-

try that clearly does exist. I first respond to the majority's erroneous symmetry arguments. I then point out the symmetry that the majority ignores.

### 1.   The Majority's Symmetry Arguments

#### a.   The Jenks Act and Rule 16(a)(1)(E)

The majority argues that because "physical possession" is the "dispositive factor" in determining whether material is discoverable under the Jencks Act and Rule 16(a)(1)(E), symmetry requires that it also be the test for whether documents are excepted from discovery under the work-product protection of Rule 16(a)(2). Majority Op. at 357, 358. This argument ignores the plain language of Rule 16(a)(2), which protects only "internal documents . . . made by" the federal government. On its face, this category of documents is not coterminous with documents in the "possession" (Jencks Act), or "possession, custody, or control" (Rule 16(a)(1)(E)), of the federal government. Rather, it represents a narrower subset of them.

Moreover, the result of the majority's argument is absurd. Like Rule 16(a)(1)(A), the Jencks Act and Rule 16(a)(1)(E) are discovery rules requiring disclosure. By contrast, Rule 16(a)(2) is an exception to a rule requiring disclosure. Reading an exception so that its scope is identical to the rule that it modifies makes no sense. In that event, the exception entirely obliterates the rule. This is why the Supreme Court has counseled not that exceptions be read as symmetrical to rules, but rather that they be read narrowly. *Clark*, 489 U.S. at 739.

#### b.   FBI "Form 302" Reports

The majority argues that it would create an "asymmetry" to protect Form 302 reports made by FBI agents under Rule 16(a)(2), but not to protect similar reports created by state or

local police officers. Majority Op. at 362. This difference in treatment is, indeed, an asymmetry. But it is one clearly contemplated by the work-product protection of Rule 16(a)(2). The difference in treatment between FBI reports and state and local police reports reflects the distinction, fundamental to the work-product exception, between documents made by a party or its agent, which are protected, and documents created by a non-party, which are not. The purpose of the work-product exception — to give parties freedom and incentive to develop their own cases, *see United States v. Nobles*, 422 U.S. 225, 239-40 (1975) — simply is not "promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents." *In re Grand Jury Subpoenas*, 318 F.3d at 384.

### 2.   Symmetry Argument Ignored by the Majority

The majority ignores the obvious symmetry between Rule 16(a)(2) and the parallel provision in Rule 16(b)(2). Rule 16(a)(2) protects the work product of the government. Rule 16(b)(2) protects the work product of the defendant. In relevant part, Rule 16(a)(2) protects against "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." In relevant part, Rule 16(b)(2) protects against "discovery or inspection of . . . reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense[.]" That Rule 16(a)(2) and Rule 16(b)(2) share nearly identical texts is consistent with the rulemakers' broader intent that Rule 16 create reciprocal discovery rights and obligations between the government and the defendant. *See* Fed. R. Crim. P. 16 advisory committee's note (1975, 1993, and 1997 Amendments).

Symmetry demands that if the government is allowed, under Rule 16(a)(2), to refuse to disclose any document that

comes into its possession, custody, or control, regardless whether it was "made by" a federal "agent," defendants should be afforded comparable protection from disclosure by Rule 16(b)(2). But I find it difficult to believe that either the government or the majority would support such a "symmetrical" reading where documents in the possession of the defense are at issue and are otherwise discoverable under Rule 16.

## Conclusion

The government is very appropriately concerned in this case about the safety of prospective witnesses. But the witness protection problem cannot be solved by reading the work-product exception in Rule 16(a)(2) so broadly that it effectively obliterates the discovery mandated by Rule 16(a)(1). As the government and the majority read Rule 16(a)(2), the work-product rule protects virtually all documents now in the possession of the government, whether or not those documents were made by agents of the federal government, and whether or not those documents endanger the safety of any witnesses. Under the majority's reading, it is enough that the documents be relevant to the case, and that they have been given to and are in the possession of the federal government.

The government has emphasized throughout this case, both in the district court and here, that it is concerned about witness safety. Rule 16 includes a provision that is much better suited for the protection of witnesses than the work-product rule. That provision is Rule 16(d)(1) ("Protective and Modifying Orders"), under which the court may "[a]t any time . . . for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." The Rules Advisory Committee specifically designed Rule 16(d)(1) to provide a mechanism to protect witness safety, and to grant considerable discretion to the district court in drafting orders under that rule. *See* Fed. R. Crim. P. 16 advisory committee's note (1974 Amendment). In fact, the district court in this case

entered a very extensive protective order under Rule 16(d)(1). Any debate about whether the district court's order has sufficiently protected witnesses is a debate about the drafting of a protective order under Rule 16(d)(1). It should not be a debate about the scope of work-product privilege under Rule 16(a)(2).